No. 42.—MARY C. WESTFALL, by her next friend, CHARLES. C. O'NEAL, plaintiff in error, vs. SCOTT, CARHART & Co. defendants in error.

[1.] A party cannot interpose, in Equity, in a controversy between others in. regard to a matter in which he has no interest, and cannot be affected by the decree.

[2.] When the plaintiffs have elected to proceed at Law, and the remedy, according to the case made by the bill is adequate, a Court of Chancery will not entertain jurisdiction of the cause by enjoining it.

In Equity, in Dougherty Superior . Court. Decided by Judge ALLEN, May Term, 1856.

This was a bill filed by Scott, Carhart & Co. alleging that in 1849 and 1850 they were partners engaged in business in Macon, Georgia; that during those years they sold to the firm of Wade & Westfall, composed of James W. Wade and Thomas G. Westfall, of Albany, Georgia, goods to the amount of $800 ; that subsequently, being apprehensive of the loss of their debt, one of complainants went to Albany and succeeded in bringing about a settlement, by which complainants received the joint note of the said Wade & Westfall, indorsed by Mary C. Westfall, the wife of said Thomas G. for the sum of $618 33, dated May 6th, 1851, and due four months after date ; that in December, 1851, complainants brought suit on said note against the said Wade & Westfall; the said Mary C. not being sued because complainants were advised that a married woman could not be sued in an action at law in this State; that judgment was recovered at May Term, 1852, of Baker Superior Court, and a *fi. fa.* issued, and was, without the knowledge or consent of complainants, levied on a horse and buggy and a certain store-house, from which nothing was realized; that Wade & Westfall are totally insolvent and the *fi. fa.* is useless, unless it can be collected out of certain negroes mentioned in a subsequent part of the bill; that ow-

ing to the notoriety of their insolvency, complainants did not have any entry of "*nulla bona*" made on said *fi. fa.* but will do so if it is desired by the parties.

The bill charges that at the time when said judgment was recovered, the said Thomas G. Westfall had in his possession several negroes; and that about the 15th day of May, 1852, during the term of the Court at which said judgment was obtained, and after the same was obtained, he, as complainants believe, without any consideration whatever, and for the sole purpose of defrauding complainants, sold and delivered said negroes to A. Y. Hampton, then of Baker, but now of Dougherty County; that said Hampton, well knowing complainants had such a judgment, immediately and without the knowledge of complainants or the Sheriff of said county, removed said negroes, secretly and at night, before a *fi. fa.* had issued on said judgment, to the County of Laurens in said State and kept them in places unknown to complainants until the year 1855, when judgments for a large amount having been obtained against the said Hampton, he turned over said negroes to George W. Collier, Deputy Sheriff of said County, to be sold for the payment of his (Hampton's) debts. The bill charges that said Hampton turned over to said Collier other negroes at the same time, which he had at different times before and since complainant's judgment, received from said Westfall, under pretended purchases and without paying any consideration. All of which negroes were turned over to pay judgments against Hampton, some of which were mortgage, and others Common Law judgments; that said negroes were about to be sold as the property of Hampton by said Deputy Sheriff, although it was well known they belonged to said Westfall, when Charles C. O'Neal, as the next friend of the said Mary C. Westfall, filed his bill, alleging that the said Mary C. became entitled to certain negroes, being the negroes about to be sold by virtue of the wills of her grand father, Andrew Hampton and William O'Neal, and which negroes were settled upon the said Mary C. before marriage by the said Thomas G. Westfall, to be held by her free from his debts; that

William W. O'Neal was appointed trustee of said Mary C. in said marriage settlement and undertook to perform the duties of said office; but afterwards, combining with the said Thomas G. to defraud the said Mary C. did not carry out said settlement, and failed to have the same recorded; that said Thomas G. in consideration of his design to defraud his wife, did, without her consent, sell said negroes to Andrew Y. Hampton, and the said Hampton being insolvent, they were about to be sold by the Sheriff to pay his debts, and the rights of the said Mary C. sacrificed.

Complainants allege that upon this state of facts, the bill filed by the said Charles C. O'Neal, as the next friend of Mary C. Westfall, was sanctioned, and the Sheriff (Collier) enjoined from selling said negroes until the final determination of the rights of the said Mary C.; that complainant's *fi. fa.* has been placed in said Collier's hands with instructions to levy on said negroes, which he has done, but refuses to sell them on account of the pendency of said injunction.

Complainants charge, that so far as they can learn, the bill filed by said O'Neal is unjust, vexatious and false in its statements; they charge that it is well known by the parties to it, to be for the sole purpose of unjustly depriving complainants and the creditors of Andrew Y. Hampton of their rights; that the said pretended marriage settlement, although written out and signed, was never actually entered into nor recorded, and that by the consent of all the parties thereto, and at the special instance and request of the said Mary C. it was agreed, before the marriage, in the presence of many persons, to be thrown aside, and was revoked and annulled and never considered of any binding force after it was signed. Complainants charge that Thomas G. Westfall having once had the benefit of said negroes, and having sold them, and the said Andrew Y. Hampton knowing that the *fi. fas.* against him will more than exhaust the proceeds of the s⸱⸱ of said negroes, have combined with the said Charle⸱ O'Neal in having said bill filed and by giving a parti⸱ scure and garbled statement of the facts, put togeth⸱

deceptive manner, have wrongfully procured an injunction from the Chancellor; that neither the said William W. O'-Neal, trustee, (who is the only disinterested party to said marriage contract,) nor any of the creditors of the said Thomas G. Westfall nor of the said Andrew Y. Hampton, have been made parties thereto, although the real parties in interest, and although they have frequently made application to be made parties—all of which convince complainants that the true object of said bill is to defeat their just claims contrary to law and good conscience.

Complainants further charge, that there never was such a marriage settlement as would, in law, defeat their legal priority ; and if there was, it had been revoked; that from the year 1848, when it is pretended to have been made, to the year 1855, a space of 7 years, the said Thomas G. Westfall has had possession and control of all the property which the said Mary C. received from her grand-father, and nothing was ever heard of such marriage settlement, and there never has been and is not now any record of it ; all of which facts were known to the said Mary C. and her said trustee.   Complainants allege that the said Thomas G. and his wife, the said Andrew Y. Hampton, William W. O'Neal and George W. Collier, are combining together, and under various pretences, are endeavoring to defraud them of their just rights.

Complainants pray, in view of the foregoing facts, that the bill filed by the said Charles C. O'Neal, next friend, &c. be enjoined, and that said pretended marriage settlement be cancelled, and Thomas G. Westfall, Andrew Y. Hampton and William W. O'Neal, trustee, be perpetually enjoined from claiming or interfering with said negro property; and further, that the said George W. Collier, Sheriff, be decreed to sell said negroes and turn over the proceeds to complainants and other judgment creditors of Westfall.

This bill having been sanctioned by the Chancellor, a demurrer was filed to it by defendant, on the following grounds:

1st. There is no equity in the bill.

2d. There is nothing shown in the bill, to give a Court of Equity jurisdiction of the cause. .

3d. That by their own showing, complainants have an adequate and complete remedy at Law.

4th. That complainants show themselves interlopers in the cause of the said Mary C. Westfall against the said Thomas G. Westfall and Andrew Y. Hampton, in said Court, and which they pray to enjoin without either exhibiting the same or making themselves parties defendants thereto, or showing that they have been or threatened to be opposed or obstructed in collecting their money out of the property in the said bill mentioned.

5th. Because the said bill is an unfair effort to prejudice the cause of said Mary C. Westfall *vs.* the said Thomas G. Westfall and A. Y. Hampton, and to vex and harrass her therein, by making themselves plaintiffs against her, instead of becoming parties defendant in said litigation.

The Court over-ruled the demurrer, and Counsel for defendant excepted, and assigned the same as error.

S. T. BAILEY and WM. C. CONNELLY, for plaintiff in error.

R. K. HINES, for defendants in error.

*By the Court.*—McDONALD, J. delivering the opinion.

[1.] The Court below ought to have sustained the demurrer filed in this case. The complainants cannot interpose in the contest between Charles C. O'Neal, as next friend of Mrs. Westfall and Hampton. They have no interest in it, and cannot be affected by any decree the Court may make.

[2.] The complainants have taken the initiatory steps to have the property subjected to the payment of their debt; they have selected their forum ; they have ordered a levy on negroes, and the levy has been made.

The property has not been claimed, but it is alleged that the Sheriff has not proceeded to sell, because he has been

enjoined in another case. That is no excuse, for many reasons. The negroes are not, in that case, levied on as the property of Westfall, but of Hampton. In complainant's case, they are levied on as Westfall's property, and they may not be claimed under that levy. The Sheriff will certainly be subject to be ruled for the money, if he does not proceed to sell.

If the facts stated in complainant's bill be true, there is nothing to prevent the property from being found subject to their judgment, if it should be claimed.

According to their allegations, Westfall did not make the sale to Hampton until the lien of their judgment had attached; and it was without consideration and fraudulent; and therefore, a claim by him, if these things be true, cannot prevail.

The same may be said in respect to any claim that may be interposed by Mary C. Westfall or her next friend, if the statements of the bill are true.

The complainants say that the marriage settlement between their debtor, Thomas G. Westfall, and his wife, Mary C. although written out and signed, was never actually entered into nor recorded; and that by the consent of all the parties thereto, and at the special instance and request of the said Mary C. it was agreed before the marriage, in the presence of many persons, to be thrown aside, and was revoked and annulled, and never considered as of any binding force after it was signed. If what complainants allege be true, there can be no reason why a Court of Chancery should take cognizance of the case, especially after the complainants have elected to proceed by levy.

The judgment of the Court below is reversed.