<hr />

DUSSAUME et al. v. BURNETT et al.

Where the ancestor of certain heirs held real estate under a grant or concession from the Spanish Lieutenant Governor of Upper Louisiana, which concession in 1816, was confirmed by the report of the Recorder of Land Titles at Saint Louis, and an act of Congress recognizing and referring to the same; and where the said heirs, and their husbands, in 1836, and before a patent for the land had issued by the United States, conveyed said land by deed, which after reciting the parties—the interest of the heirs in the land—their willingness to sell—the consideration—and the usual words, "grant, bargain, and sell," provided as follows: "To have and to hold the said tract of land above mentioned and described, and all right, title, interest and estate of the said F. C. and L., his wife, or either of them, in and to the same, and all the rights, privileges and appurtenances thereunto belonging, unto the said B. his heirs and assigns forever; and the said F. C. and L., his wife, do hereby bind themselves, their heirs, &c., to warrant and forever defend the right and title thereto, to the said B., his heirs, &c., against all claims and demands whatsoever, saving and accepting the

Dussaume et al. v. Burnett et al.

claim or demand of the United States. And the said F. C. and L., his wife, for themselves, their heirs, &c., do hereby covenant and agree to and with the said B., his heirs, &c., that they have good right and power to sell and convey the interest of the said L. in the said land; that at and before the date hereof, she was entitled to one-third part of the interest and estate therein formerly owned by the said B. G. (the ancestor), deceased; and that they will hereafter make and execute to the said B., his heirs, &c., at his cost, *any other deed or conveyance concerning the said land, and the portion of the said L. in the same, that may be required of them to make;* and they do hereby constitute and appoint, without the power of revocation, the said B. *their lawful attorney, in their name and stead, to act for, demand, receive, sue for, recover and possess, all their right, interest and estate,* and the right, interest and estate of either of them, in the said lands; and to petition Congress, or any other body or authority, respecting the premises, in the same manner, and to the same effect, as they themselves could have done, had they retained the said interests in the said land;" *Held,* 1. That the deed, without the provision for a subsequent conveyance, or the clause constituting the grantee an attorney, &c., contained all that was necessary to pass the title to the land; and that there was nothing in those provisions tending to show that the conveyance was a conditional one, nor that the grantors retained any interest in the land, nor that any subsequent deed or writing was contemplated between the parties thereto, as being *necessary* to invest the grantee with a perfect title; 2. That both of these clauses are in aid and furtherance of the general covenants contained in the deed, and were in no manner inconsistent with them; but conferred upon the grantee power, and invested him with privileges, beyond what he would have had under and by virtue of the usual covenants; 3. That the fact that the grantors had covenanted to afterwards make any *other* deed that might be required, could not vitiate the one already made, nor take from it its validity as a deed.

An individual owning an interest or share in a tract of land, is not so far interested in the entire land, as to prevent him, in his official character, from taking the acknowledgment of a deed, conveying to a third party, another and distinct interest or share in the same land.

The fact that the grantee in a deed, and the party before whom the deed was acknowledged, had an agreement or understanding that each should purchase distinct shares in the same land, with a view to a joint speculation, might be a circumstance tending to show fraud, or a fraudulent combination, to impose upon the grantors, but in itself would not be sufficient to vitiate the deed.

The record of a deed, the acknowledgment to which is fatally defective, will not operate to give constructive notice of its contents, to third persons.

As to ordinary conveyances, if third persons have *actual* notice of them,

Dussaume et al. v. Burnett et al.

they are bound by such notice, to the same extent as they would have been by the recording of a deed in all respects regular and perfect in its acknowledgment.

Where in a proceeding in chancery to set aside certain deeds of lands of the wife, executed in 1836, which were defectively acknowledged, and to quiet the title of complainant under conveyances from the same grantors, executed in 1854, it appeared that one of the complainants had taken title to a portion of the real estate, (which was not in controversy,) under title derived from said defective deeds, prior to receiving the title under which he now claims; that he bought the latter title, for the express purpose of commencing suit; that the grantors told the complainant, when he purchased the latter title, that they had, long before that time, sold their interest in the land—that they had no disposition to take advantage of their former conveyances; that he purchased the latter title for a nominal consideration; and that the conveyances made in 1854, were obtained by fraudulent representations; and where the deeds made in 1836, were so defectively acknowledged, that they did not divest the wife of her interest in the lands; *Held*, 1. That the complainant had *actual* notice of the deeds of 1836; 2. That although the said deeds did not divest the wife of her title and interest in the land, and the grantees therein obtained no title, yet that, under the proof made in the case, the complainant could not take advantage of the defects in the deed.

Where a complainant in Chancery admits upon the record that he never authorized the commencement of the suit, and manifests no wish that his rights shall be protected by the Court, the Chancellor will refuse to decree the relief prayed for, even though upon the showing made in the cause, he may be entitled to such relief.

### *Appeal from the Dubuque District Court.*

### WEDNESDAY, SEPTEMBER 9.

IN CHANCERY.  About the year 1796, one Bazil Giard took possession of, and made improvements upon, a tract of land, equal to one league square, on the west side of the Mississippi river, opposite the village of Prarie Du Chien. In November, 1800, the Spanish Lieutenant Governor of Upper Louisiana, made a concession of this tract to said Giard, and this concession was afterward in 1816, confirmed by the report of the recorder of land titles, at St. Louis, Missouri, and an act of Congress recognizing and referring to the same.  About this time the said Giard died, leaving two daughters, Mary Louisa, (or Lizette,) Mary,

and a grand daughter, Felicite, who was the daughter of Angelie Suppiennee Giard. The daughter Mary married Tunis Bell,—and she died in 1838, and he in 1843, leaving no issue. Prior to 1836, Lizette married Francis Chenevert, and the grand-daughter Felicite, one Paul Dussaume.

In 1854, Chenevert and wife, and Dussaume and wife, by deed, conveyed to James McGregor, Jr., all of said claim, except 576 acres at the west end of the same. On June 27th, 1832, Bell and wife, by deed, conveyed their interest, (then supposed to be one half of the entire tract,) to James H. Lockwood, and afterwards, on the 16th of March, 1836, for some cause, made another deed to the same person for one-third of said tract. The first deed was for one-half, because it was then supposed that there were but two heirs, and the second deed was probably made so as to only include their *true* interest, after the third heir became known. On the 6th of March, 1836, Chenevert and wife, by an instrument in writing, conveyed their interest in this tract, to Thomas B. Burnett, and on the 27th of April of the same year, Dussaume and wife sold their interest of one-third, to Burnett and Lockwood jointly. About the 11th of June, 1840, Lockwood conveyed his interest to Peter Powell, of St. Louis, Missouri, but this deed was lost, and on the 8th of March, 1841, he made another deed to supply said loss. Burnett, on the 10th of April, 1837, sold half of his interest to one Alexander McGregor, who, on the 16th of September, 1841, sold the same to Powell, reserving therefrom 160 acres in the south east corner thereof. All these deeds were recorded in the proper offices, near the time of their execution and delivery. This bill was filed at the May term, 1855, of the District Court, in the names of the surviving heirs of Giard and James McGregor, Jr., (their grantee,) against those claiming under the conveyances made to Lockwood and Burnett, asking to set the same aside, and quiet their title, for various defects alleged to be contained in said conveyances; and because the same were obtained by fraud and circumvention, by duress, and without consideration. In

1846, Powell and Burnett departed this life, and their heirs are made parties to the bill. The cause was tried upon bill, answers, replications, and a great mass of testimony. Upon the final hearing, the bill was dismissed. The 160 acres in the south east corner of the tract reserved in the deed from Alexander McGregor to Powell, is not now in controversy. The complainant appeals. The other material facts will be found stated in the opinion of the Court.

*Smith, McKinlay & Poor* and *J. Williams,* for the appellants.

*Clark & Bissell* and *W. R. Biddlecomb,* for the appellees.

WRIGHT, C. J.—Both parties to this controversy, claim under Bazil Giard—the complainants, Dussaume and wife and Chenevert and wife, as his heirs, and McGregor, by deed from the said heirs of a portion of their interest in said land. On the other hand, the heirs of Burnett and Powell claim under the deeds made by the heirs of the said Giard, in 1836. It is manifest, therefore, that the decision of the case must depend, to a great extent, if not entirely, upon the validity of the conveyances under which respondents claim; for those conveyances being prior in date, and recorded long anterior to the one under which the complainant McGregor, claims, must have precedence against him, as well as the surviving heirs, unless for some cause they shall be held invalid. To these conveyances and their validity as against the heirs of Giard, several objections are made, which may be appropriately considered under two heads. The *first* class of objections involve the legal sufficiency of some, if not all, of said conveyances, to divest the title; the *second,* whether there was such fraud and unconscionable conduct on the part of the grantees, Lockwood and Burnett, in procuring the same, as should induce a court of equity to set the same aside, as against them or their heirs; and if so, then how far the heirs of Powell are affected by notice of such fraud. These objections we shall notice as briefly as possible, consistent with the char-

acter of the case, and the magnitude of the interests involved.

And First. It is urged that the instruments referred to, do not purport on their face to be conveyances or deeds for this land, but agreements to convey, or if not such agreements, then mere powers of attorney authorizing Lockwood and Burnett to take the neccessary steps to pro cure the title for the said heirs. These deeds are all of the same form, and the parts necessary to the full understanding of the question here made, are as follows: after reciting the parties, the interest of the heirs in and to the land—their willingness to sell—the consideration—the sualwords, "grant, bargain and sell,"—then follows this language: [We quote from the deed from Chenevert and wife to Burnett.]

"To have and to hold the said tract of land above mentioned and described, and all right, title, interest and estate of the said Francis Chenevert and Lizette, his wife, or either of them, in and to the same, and all the rights, privileges and appurtenances thereunto belonging, unto the said Thomas B. Burnett, his heirs, &c., forever; and the said Francis Chenevert, and Lizette, his wife, do here by bind themselves, their heirs, &c., to warrant, and forever defend the right and title thereto, to the said Thomas B. Burnett, his heirs &c., against all claims and demands whatsoever, saving and excepting the claim or demand of the United States. And the said Francis Chenevert and Lizette, his wife, for themselves, their heirs, &c., do hereby covenant and agree to and with the said Thomas B. Burnett, his heirs, &c., that they have good right and power to sell and convey the interest of the said Lizitte in the said land; that at and before the date hereof, she was entitled to one third part of the interest and estate therein formerly owned by the said Bazil Giard, deceased, and that they will hereafter make and execute to the said Thomas B. Burnett, his heirs, &c., at his cost, any other deed or conveyance concerning the said land, and the portion of the said Lizette in the same, that may be re-

Dussaume et al. v. Burnett et al.

quired of them to make; and they do hereby constitute and appoint, without the power of revocation, the said Thomas B. Burnett, their lawful attorney, in their name and stead, to act for, demand, receive, sue for, recover and possess, all their rights, interest and estate, and the right, interest and estate of either of them, in the said land, and to petition Congress, or any other body or authority, respecting the premises, in the same manner and to the same effect, as they themselves could have done, had they retained the said interest in said land."

That the object and purpose of these portions of the foregoing instrument, may be more clearly understood, it is proper to state, that at the time of its execution, no patent had been issued by the United States, in accordance with the concession and confirmation to Bazil Giard, and that the same was not issued until the 2d of July, 1844, and was then made to said Giard, "and to his heirs and assigns forever," and delivered to said Lockwood and Burnett.

Without, at this point in the case, determining whether Lockwood and Burnett, at the time of their purchases, knew that said concession or grant had been confirmed, we will only say, that the testimony tends pretty strongly to prove, that they purchased in comparative ignorance of the extent of the interest of these heirs, or the true and actual position of the title to this land. But for these facts, it would be difficult to understand what object or purpose the parties could have had, in inserting the agreement for a subsequent conveyance, or the clause giving authority to petition Congress, and do other acts, in order to secure and perfect said title. What effect, then, shall such parts or clauses have upon this instrument? Shall they operate to defeat the deed, and prevent it from passing the title to the grantees therein? We conclude that they in no manner vitiate the conveyance as a deed, and that under and by virtue of said instrument, (so far as this objection is concerned), the vendees acquired a good and sufficient title to said land. Without these provisions,

the instrument contains all that is necessary to pass the title; and there is nothing in them tending in the least to show, that the conveyance was a conditional one—that the grantors retained any interest—nor that any subsequent deed or writing was contemplated between the parties thereto, as being necessary to invest the grantees with a perfect title. The fact that the grantors have covenanted or undertaken to afterwards make any other deed that might be required of them, could not vitiate the one already made, nor take from it its validity as a deed.— Neither, in our opinion, does such a covenant warrant the conclusion, that the parties merely entered into a contract for a conveyance. It would rather seem to mean, that the grantors had parted with their title, as both parties supposed, but that in view of their want of knowledge as to the true state of the title, this provision was incorporated, looking to a subsequent conveyance, should one become necessary. And these remarks equally apply to the provision giving to the grantees the right to petition Congress, or do any other act, that might be necessary to secure to themselves the full and entire estate and interest of the grantors in said lands. Both of these clauses are in aid and furtherance of the general covenants contained in the deed, and are in no manner inconsistent with them; but, if possible, confer upon the grantees powers, and invest them with privileges, beyond what they would have had under and by virtue of the usual covenants.

We are referred to the case of *Caillard* v. *Bernard*, 7 S. & Marsh. 319, to sustain the position of appellants, that these instruments did not divest the grantors of all title to said land. The cases are by no means parallel. In that case, the grantee in a deed conveying the fee, at the same time executed a paper, reciting that he received the property charged with the settlement of the just debts of the grantor. It was held that this paper was correctly admitted in evidence, in an action of ejectment by the grantee, to show that he had but a trust in the property. In this case, there is no agreement, express or im-

plied, on the part of the grantees, that they are ever in any manner to account, or be responsible to the grantors, for the use or disposition they may make of the land, or that they took it charged with any duty or trust. We conclude, therefore, that these deeds are not subject to this objection. What other effect the provisions may have, is a question which we may find it necessary to consider in another part of the case.

It is next objected, that the deed from Chenevert and wife is invalid, and passed no title, because it was acknowledged before Lockwood, the grantee therein. The deed is made to Burnett, and was acknowledged before Lockwood, a justice of the peace of Crawford county, in the territory of Michigan. We suppose, therefore, that the objection is, not that Lockwood is the grantee named in the deed, but that he was, at the time of its execution, a party beneficially interested therein, by virtue of his agreement and contract with Burnett, and could not, therefore, legally act as the acknowledging officer. The record does not show, however, that Lockwood had any interest, or was to have any interest, in the purchase made by Burnett. By their respective purchases from Chenevert and Bell, each owned one-third of the land, and by their subsequent joint purchase from Dussaume, they were joint owners of the remaining third. The fact that Lockwood, at the time, may have owned one-third of this tract, would not make him so far interested in the entire land, as to prevent his taking the acknowledgment of a deed, conveying another and a distinct interest or share. Nor would the position assumed by complainants, that Lockwood and Burnett had an agreement or understanding for each to purchase these distinct interests, with a view to a joint speculation, of itself render invalid the deed, because it was acknowledged before Lockwood. It might be a strong circumstance, tending to show fraud, or a fraudulent combination between them, to impose upon the heirs of Giard, but in itself it would not vitiate the deed. In the case of *Thompson* v. *Brobst*, (4 G. Greene, 135,) refer-

red to by appellants, the deed was made to Brobst, and the acknowledgment taken by him as County Judge. The cases are quite unlike.

In the third place, it is objected that the deed from Dussaume and wife to Lockwood and Burnett, is not sufficient to pass the title, for the reason that it was not properly acknowledged. It is admitted by respondents to be defective, but we are asked to determine the effect of such defective acknowledgment upon the rights of these parties. And we first inquire, how far the complainant McGregor, can claim the benefit of this objection. We believe the rule to be, that a deed, the acknowledgment to which is fatally defective, will not, though recorded, operate to give constructive notice to third persons, of its contents. But, as to ordinary conveyances, if such third persons have *actual* notice of the same, they are bound by them, to the same extent as they would be by the recording of a deed in all respects regular and perfect in its acknowledgment. This latter proposition, at least, has been acted upon and recognized repeatedly in this Court. *Miller* v. *Chittenden et al.* 2 Iowa, 315; *Bell & Co.* v. *Thomas*, Ib., 384; *Blain* v. *Stewart*, Ib., 378; *Wickersham* v. *Reeves & Miller*, 1 Ib., 413; *Hopping* v. *Burnam*, 2 G. Greene, 39.

We are then led to inquire, whether McGregor had actual notice of the existence of this deed, and of this we entertain no doubt. It is abundantly and conclusively established, that he took his deed with a full knowledge that this and the other deed from the heirs, were outstanding, and indeed that he bought for the express purpose and design of commencing this suit. And, in addition to this, it is shown that as far back as in 1845, he took title from Burnett and wife, for the 160 acres in the south-east corner of the grant, and which is not now in controversy, but which Burnett held by the same title that he did all the remaining portion of said land. Having actual notice, therefore, of the deed from Dussaume and wife to Lockwood and Burnett, we need not, upon general principles, stop to ascertain what effect the defect-

ive acknowledgment of the same would have upon his rights, or how far he, in the absence of such notice, could claim the benefit of such defect. If this is to be treated as an ordinary deed, the defect could not inure to his benefit or advantage, except upon the hypothesis, that the instrument, though recorded, did not impart notice to him as a subsequent purchaser. But having actual notice, in case of any ordinary deed, he could not complain; and we therefore, next inquire, whether he or the grantors, can, on account of such defect in this particular deed, avoid the same. And it must be borne in mind, that the property sold was the estate of the wife. Was it an ordinary conveyance of land belonging to the husband, it would be clear, under the rule recognized in *Blain* v. *Stewart*, 2 Iowa, 378, that he would be bound by the deed; for it is there held, that the acknowledgment and recording of a deed, are not essential to the validity thereof as to the grantor. In support of this doctrine, see 1 Shep. 281; 9 N. H. 24; 2 Scam. 371. And of the correctness of this rule, where such grantor comes into a court of equity, not denying the acknowledgment in fact, but only insisting that the acknowledging officer had not attached a proper and perfect certificate, there can be no doubt. On the other hand, however, we have recognized the rule, that a sufficient acknowledgment is essential to pass the wife's dower interest in the husband's lands, and that she is not bound by such defectively acknowledged instrument, but may, after his death, assert her right and claim her dower. *O'Ferral* v. *Simplot*, 4 Iowa, 381.

What rule, then, shall obtain, where the deed is made by husband and wife, of land which she holds, in her own right; and connected with this, may arise the further question, as to how far the complainants will be bound by the covenant for further assurance, or for another conveyance, contained in all these deeds? At common law, the wife could not make a deed. She is only competent to do so by force of statutory law, and the policy, as well as the letter

of the law, would seem to require that she should not be held to have parted with her interest in lands, except the conveyance shall be executed substantially in the manner required by the statute. The statute of Michigan, in force when this deed was executed, required that conveyances executed out of the Territory, affecting real estate in said territory, should be acknowledged, proved and certified in conformity with the laws of the state where the same might be proved and acknowledged. This deed was made and acknowledged in Illinois, and the statute of that state, then in force, provided that her real estate might be conveyed by an instrument signed by husband and wife, and acknowledged in the manner therein specified. As already stated, it is admitted by respondents, that this deed was not thus acknowledged. It would seem to follow, therefore, that it did not divest the wife of her interest in the land, and as a consequence, that Lockwood and Burnett acquired in law, at least, no interest which could descend to their heirs, or be by them transferred to third persons. And such being the case, McGregor claims that, as this particular deed was void as to the wife of Dussaume, it was void as to all persons, and could not operate to give actual notice of anything more than what he claims it to be, in fact, to-wit: a void deed, or one conveying no title; and that as a consequence, he, by his deed executed in 1854, acquired the better title to the interest of Dussaume and wife to said land.

To this view, respondents reply, that this deed contains a covenant for further assurance; that it was competent for the wife, joining with the husband, to thus contract with reference to her seperate estate; that a court of equity is competent to enforce that agreement, and will treat that as done, which in equity should be done, and thus recognize their claim, as being superior to that of complainants. We do not deem it necessary, however, to enter upon this view, for in our opinion, there is another one, arising from the peculiar facts of this case, equally if not more, satisfactory—one which recommends itself as being

Dussaume et al. v. Burnett et al.

eminently just and equitable, and in no manner contravening any rule which obtains in a Court of Chancery.

The complainant McGregor, claims nine-tenths of this tract of land. To have his claim thereto settled and adjudicated, he comes into a court of equity, and asks that court to declare certain prior conveyances made to Lockwood and Burnett, void as against him; and as to the particular deed now under consideration, he prays, in substance, that the heirs of Burnett and Powell shall be adjudged to have acquired no title thereunder, and that he, by virtue of his deed of June, 1854, shall be decreed entitled to that which said heirs would otherwise have. Did this claim come from the wife of Dussaume, or the heirs—and were they here as substantial parties, setting up this defect in the acknowledgment—we should be much more inclined to listen to their prayer, and afford them relief. McGregor, however, is in no position to ask aid from this court. We have already stated, that he bought this property, with full and actual notice of the prior conveyances to Lockwood and Burnett, and that he bought with the intention and design of commencing this suit. In addition to this, the testimony shows, that the grantors told him that they had long before that time, sold their interest in this claim; that they had no disposition to object to, or take advantage of, their former conveyances; that they were getting old and wanted no trouble; that he bought from them for the sum of *four thousand dollars*, as expressed in the deed, but that in truth he gave to each five dollars, (and this was treated as the usual present which the Canadian French women exact when they sign a deed,) and at the same time, went through the solemn farce of assigning to these old Frenchmen, *a patent to use certain improvements in, and vend tea and coffee-pots*, in that the Territory of Minnesota, which both parties treated as worthless, and which, as a circumstance showing the true character of the transaction on the part of McGregor, is only equalled by his further promise to *give* Marie Chenevert and Dussaume *each a coffee-pot*, which was *to be* made, but which they have never received.

He at the same time, entered into a written agreement, and bound himself in consideration of said conveyances, to prosecute the claim of said heirs to said land, against all persons claiming adverse to them, and to hold them, and each of them, free from all costs that might accrue from said prosecution. So that in fact, it may be said that he paid nothing for nine-tenths of this entire tract of land, unless his agreement to prosecute the claim of the heirs to the other tenth, and maintain and carry on a law suit for them, can be treated as a consideration. In addition to these facts, it is shown that all the taxes assessed against these lands, commencing with 1840, have been paid by Lockwood and Burnett, or those claiming under them, the respondents herein; that in 1845, McGregor, in writing from Washington City, spoke of the grant of this land, of getting a copy of the same from the proper office, and of forwarding the same, that Lockwood and Burnett might avail themselves of it; and that he took a deed in the same year from Burnett, for one hundred and sixty acres of the same grant, which deed recites that the said 160 acres are a part " of the Spanish grant of land, granted to Bazil Giard." It also appears that in 1837, Lockwood and Burnett entered into an agreement, which recites in substance, that they had purchased the title of the heirs of Giard to this land; that Lockwood had, at his own expense, made improvements, and cultivated a farm on said premises the previous year; that Lockwood, when the said claim should be confirmed and surveyed by competent authority, was to have one hundred and sixty acres in a reasonable, convenient, and compact form, so as to include said improvements ; that Burnett was to convey his right and title to the same to said Lockwood ; that as a return or compensation therefor, Burnett was to have the privilege of selecting the same amount anywhere else on said tract, in like convenient and compact form; and that founded upon this agreement, the said James McGregor, and one Duncan McGregor, in 1847, obtained a partition of the one hundred and sixty acres in the south-east corner of said tract, to which parti-

tion suit, the unknown owners of the balance of said Giard claim, were made parties.   It is further shown, that a cause is now pending in the Dubuque District Court, between James and Alexander McGregor, wherein the said James claims title to said one hundred and sixty acres, under and through the said Thomas B. Burnett.   After this suit was commenced, Marie Chenevert signed the following paper :
"I have *never authorized* any person or persons to *com-* "*mence a suit* against James H. Lockwood, the heirs of "Thomas B. Burnett, and the heirs of Peter Powell, or either " of them, nor have I ever been consulted, or had the *slight-* " *est intimation of a suit being instituted,* until the present " time."   A duplicate of this was also signed by Dussaume and wife, as is shown from the testimony.   At the same time, it is shown that Dussaume and wife, executed another instrument, which reads as follows:   .

" On or about the 27th day of April, 1836, James H. Lockwood called at our residence, at or near Warsaw, Hancock county, State of Illinois, to purchase our interest in a certain tract of land for James H. Lockwood and Thomas B. Burnett, my wife, Felicite Dussaume, being one of the legal heirs of Bazil Giard, in a certain tract of land called Giard's claim, or grant, being on the west bank of the Mississippi river, nearly opposite Prairie du Chien, now Clayton county, and State of Iowa.   We did bargain for the same with the said Lockwood, for the sum of one hundred dollars, &c., which was paid to us at the time, by the said Lockwood, by cancelling our indebtedness to him, the said Lockwood, and we executed to them a deed, according to law, of our interest in and to the said claim ; and we then considered it to be an absolute sale of all our interest in said claim, and we never asked the advice of either James H. Lockwood or Thomas B. Burnett, as counsellors at law, about the situation of said claim."

A substantial duplicate of this, was also signed by Chenevert, at the same time.   In January of the same year, the attorneys of McGregor, wrote to Chenevert, that they were about to commence this suit ; that in accordance

with McGregor's agreement with him, they were also to act in his behalf, but of course did not look to him for pay. They then proceed to say: "that we hope you will neither say or do anything about the case while it is going on, but wait with patience, until it is finally decided. It is very important that you should be careful as to what you do or say; and if at any time you do talk about the case, you will, of course, be wise enough to talk as if you were going to be successful, for as we have said before, we are very confident of winning the case, if we get a fair chance. If you are desirous of seeing a copy of the bill against the Burnetts and Powells, we will send you a copy. And if at any time you want any further information about it, you will please to send us a letter." The deposition of Chenevert is taken by respondents, and he swears distinctly, that he and his wife always considered the sale made in 1836, a fair one; that they never claimed, nor pretended to claim, since that time, any interest in said land, nor had they up to 1852, any hope or expectation of getting anything beyond what they received from Burnett. He further swears, that he never authorized, nor gave his consent, that McGregor, or any other person, should institute any suit in his name, for the recovery of the said Giard claim; that when the agent of McGregor applied to him and his wife for their deed, he told him that they had sold their interest, or all that they pretended to have, long before that time, and had got what was considered the full value of the same; that said agent stated, in order to get said deed, that said McGregor had some difficulty with his brother—that the deed given to Burnett and Lockwood was not good for anything; and that if McGregor recovered, he (Chenevert) should have a portion, for which he gave him the writing before referred to. The record also shows, that after signing the instruments of February, 1855, said Dussaume and Chenevert, in a sworn replication to the answer of one of the respondents, stated substantially that McGregor had acted fairly by them, and that said instruments were obtained by threats and fraud.

Dussaume et al. v. Burnett et al.

The deposition of Chenevert, portions of which we have before given, was taken after this, to-wit: in January, 1856, in which we have seen that he again re-affirms, in effect, what is contained in those papers; and in this deposition, he further states, that the greater part of the matters stated in said replication, are lies, and that he was deceived by the person or persons who translated or interpreted the same to him—he being unable to read and understand with facility our language. And it is proper to state, that this same want of knowledge of our language, obtains as to Dussaume and wife.

From this reference to the testimony, we think it is not difficult to understand the true position of the complainants in this case. And should we even grant that, under ordinary circumstances, McGregor, though purchasing with notice, by his deed acquired all the rights, and could claim to take advantage of all the defects, which the wife of Dussaume could, we are far from believing that he can do so, under the proof here made.' He seeks aid in a court of equity. He appeals to the *conscience* of a court of conscience. He asks for relief at the hands of a tribunal, which demands that its suitors shall come to its shrine with clean hands. As he *asks* equity, so he is supposed to have *done* equity, and to be ready to still comply with what is just and right. And yet, no act of his developed in this transaction, but shows to our minds most clearly that he has no right to ask any court, exercising chancery powers, to grant him relief. To our minds, it would be a reproach upon the principles of the law—a premium paid for cunning and duplicity—a reward offered to those who would stir up and maintain litigation—to permit him to take advantage of any defects in this deed. The heirs of Giard, it is very manifest, do not desire this litigation.— They have never employed counsel, and do not now seek to defeat the right of the heirs of Powell and Burnett, under the first deeds. They are beyond doubt mere instruments in the hands of McGregor. He seeks to use them for the purpose of accomplishing his scheme of spec-

ulation and fraud. He proposes to purchase about five thousand acres of land, for a patent to use and vend coffee and teapots in the Territory of Minnesota, and is told at the time, that the land had been sold; knew that it was in the hands of the heirs of Powell and Burnett, (some of them minors); knew that about eighteen years had elapsed, without any complaint being made against said first conveyances; knew that he himself had recognized the validity of said deeds, by taking a conveyance from Burnett, and appealing to the courts of the country for a partition of a portion of the same lands, under and by virtue of a contract between the original vendees, and of which he claimed and obtained the benefit; knew that Powell, at least, had paid a full and fair consideration, at the time of his purchase; and yet, notwithstanding all this knowledge, and this studied and planned effort to possess himself of the title to these lands, by means so much to be condemned, he comes to a court of equity, and asks that he may be assisted in his scheme of speculation—that he may be aided in his effort to appropriate to himself an estate for which he pays nothing—that he may find countenance in a litigation which, as to him, had its birth in a design to defraud, not only his co-complainants, but also the respondents herein. If he shall be successful in this design —if he would succeed in his speculation—he must seek some other tribunal than a court of equity. His demands are too unjust and unconscionable, to entitle him to aid in such a court.

And it is no answer to say, that respondents cannot complain, though he may have produced a fraud upon Dussaume and Chenevert; that they alone may take advantage of any fraud in their sale. Respondents claim under the heirs of Giard, and as such, they may protect themselves against a fraudulent effort upon the part of McGregor, to deprive them of their title. If he, with or without the complicity of Dussaume and Chenevert, entered into a contract which he now seeks to have the benefit of, the object and purpose of which was to deprive the

heirs of Powell and Burnett of their title, the fraud affected them, as much and more, than it did his co-plaintiffs, and it would seem that the respondent, therefore, might well urge this fraud to defeat the recovery. We are clear, therefore, that. McGregor is in no position to take advantage of the defect in the acknowledgment of the deed from Dussaume and wife to Lockwood and Burnett. And without referring to some other minor objections, which are urged to this, and indeed, all the deeds, we may say, that for the same reasons, he can take no advantage of such irregularities.

Shall Dussaume and wife have the benefit of this defect in the acknowledgment of their deed? To this inquiry, we answer, that whatever we might be disposed to do, under other circumstances, we are unwilling to decree them the relief prayed for them in this bill; for the simple reason, that they themselves have said, and admit, that they never authorized the commencement of this suit. It is but too manifest, that McGregor is the moving spirit; and that through his artful agent, he induced these aged, and to some extent, ignorant persons, to execute these deeds for this land. But they have since said, and admitted in writing, and upon this record, that they never authorized the prosecution of this action, and that they had sold to Lockwood and Burnett, in 1836, all their interest in said land, by a conveyance or deed which they considered absolute. When they seek to have their rights determined, it will be time enough to ascertain what they are. But we will not undertake to do so, in a case where they do not assert such rights, and which was commenced, and is carried on, to subserve the interests of an intermeddler, rather than the interests of those who could fairly, under any circumstances, claim to be injured by such defects.

We finally inquire, whether complainants are entitled to relief, upon the ground that the deeds to Burnett and Lockwood, were obtained by fraud, misrepresentation, and without consideration. To refer to the immense

mass of testimony bearing upon this part of the case, would too unreasonably extend the length of this opinion. We content ourselves, therefore, with simply expressing the conviction produced upon our minds, after carefully examining the entire proof. We do not think any single, or the general, charge of fraud or misrepresentation, is sustained by the proof. As to the inadequacy of the consideration, there is more testimony. When we remember, however, the frontier condition of the country in which this land is located, in 1832 and 1836—when we bear in mind the want of knowledge on the part of both parties, as to the true state of the title, or whether anything would ever be secured—when we consider that while the property has now very greatly increased in value, yet at that time, it was in a comparative wilderness, and that the very best land was then sold at very low figures—we can well understand, that while the price then paid, would, if paid now, be grossly inadequate, yet under the circumstances then existing, it could hardly be so regarded.

We conclude, therefore, that there is no sufficient ground for disturbing the decree of the court below, and it is therefore affirmed.