# WHEELING.

TAVENNER v. BARRETT et al.

BARRETT et ux. v. TRACEWELL, TRUSTEE, et al.

Submitted June 20, 1882—Decided April 28, 1883.

(*WOODS, JUDGE, Absent.)

1. An agent for the purchase or sale of an estate, though he transact the business in his own name, is generally not a proper party to a suit brought for the specific execution of the contract of sale or purchase. But if he be an agent to sell, and makes the sale, and takes of the purchaser bonds for the purchase-money payable to himself, and these bonds are secured by a deed of trust executed by the purchaser conveying other lands of his to secure such bonds, then in a suit brought by the vendor to enforce specifically such contract, and to enforce the collection of such purchase-money bond, such agent must be made a party either

---

*Cause submitted before Judge W. took his seat on the bench.

plaintiff or defendant, for in such case he is not simply an agent, but he is a trustee holding the legal title to such bonds for the use of the real vendor of said land.   (p. 673.)

2. In such case such agent or trustee may be made a co-plaintiff with the vendor, or he may be made a defendant with the vendee, the vendor being made the sole plaintiff.   (p. 675.)

3. If however the fact was, that such agent was not a trustee, but a mere agent, and could not properly be made a party to a suit for specific performance, but was improperly made a co-plaintiff with the vendor, the objection to such impropriety of proceeding would be properly made by a demurrer to the whole bill.   (p. 673.)

4. To justify the court in sustaining a demurrer to a bill for a specific performance filed by a vendor, the ground of the demurrer must be a short point, upon which it is clear, that the bill would be dismissed with costs at the hearing; if the evidence to be taken might sustain the relief asked with some modification, the demurrer ought to be overruled, and the case stand to the hearing to be disposed of on its merits.   (p. 680.)

5. It is not necessary, that the bill for a specific performance filed by a vendor should show, that he had a valid legal title to the land sold; on the contrary the bill could not be demurred to though it appeared on the face of the bill, that he not only did not have a good legal title to the land, but that he had not any title legal or equitable to a portion of the land, and that he never could acquire a good title thereto, provided this portion was an insignificant part of the land sold, as the court would in such case decree specific performance with compensation.   (p. 680.)

6. In such cases generally time is not regarded as of the essence of the contract, and the vendor's title may have been imperfect when he sold the land or when he brought the suit, it is sufficient if he can make it perfect before the report is made upon it during the progress of the suit, and time is frequently given him for that purpose; hence he cannot be required to tender and file a good deed with his bill.   (p. 680.)

7. On a contract for the sale of land the vendor is entitled to a general warranty deed, where the vendor is seized of the land in his own right, unless the contrary is agreed upon; but if the vendor be an executor, trustee or commissioner of the court, the vendee is entitled to a deed with special warranty only.   (p. 681.)

8. Where a party purchases land of a special commissioner of the court, and his purchase is confirmed, but before a deed is made to him, he executes a power of attorney to the special commissioner authorizing him to sell this land for him, and the special commissioner does so and signs a written contract agreeing to

83

convey this land to the purchaser on the payment of the whole of the purchase-money, signing the contract as special commissioner and attorney in fact of the first purchaser. HELD:

The true meaning of such contract is, that the sub-purchaser takes a deed from the special commissioner with the assent of the first purchaser, and therefore he is in such case only entitled to a deed with special warranty of title. (p. 682.)

9. If a report be made showing the liens on a debtor's land and their priorities, which the bills asks may be sold, and afterwards a demurrer to the bill is sustained, and an amended bill filed making a large number of lienors parties, who were not parties to the suit originally, such commissioner's report ought not to be confirmed, but a new order of reference should be made by the court to ascertain the liens. (p. 684.)

10. A decree can not be made between co-defendants, unless it be based on pleadings and proofs between the plaintiffs and defendants. But in a bill asking, that the liens on a debtor's land be audited, and their amounts and priorities settled, and the debtor's land sold to pay the same, though the bill admits, that a particular debt is a lien and is unsatisfied, the debtor or any other lienor may dispute the validity of such lien, and such a controversy may be decided by the court without violating the above rule. (p. 685.)

11. A deed of trust is executed by a man and his wife to two trustees to secure a debt, the grantors in the deed acknowledge it before one of the grantees, a trustee, as a notary public, and on this acknowledgment it is admitted to record. HELD:

Such acknowledgment and recordation are invalid, and the deed is an absolute nullity as to the married woman, and is to be regarded as an unrecorded deed as to the male grantor. (p. 687.)

12. A certificate of a privy examination, which fails to show, that the married woman had the deed fully explained to her is fatally defective, and the deed void as to her. (p. 670.)

13. Common law judgments or judgments of justices of the peace against a married woman on her contracts made during coverture, and judgments rendered by courts having no jurisdiction in such cases, are nullities creating no lien on her separate real estate. (p. 692.)

Appeal from and *supersedeas* to a decree of the circuit court of the county of Wood, rendered on the 18th day of October, 1879, in two causes in said court then pending, which were heard together, in one of which Ann R. Tavenner was plaintiff, and C. G. Barrett and others were defend-

ants, and in the other of which C. G. Barrett and wife were plaintiffs, and R. C. Tracewell, trustee, and John Buford were defendants, allowed upon the petition of The Life Insurance Company of Virginia and of C. G. Barrett and Sarah V. Barrett, his wife.

Hon. J. M. Jackson, judge of the fifth judicial circuit, rendered the decree appealed from.

GREEN, JUDGE, furnishes the following statement of the case:

These are two separate appeals, the one by The Life Insurance Company of Virginia, and the other by C. G. Barrett and Sarah V. Barrett, his wife, from a decree entered by the circuit court of Wood county on October 18, 1879, in two causes pending in said court, in one of which Ann R. Tavenner was plaintiff, and C. G. Barrett and others were defendants, and in the other C. G. Barrett and Sarah V. Barrett, his wife, were plaintiffs, and John Buford and R. C. Tracewell, trustees, were defendants, which causes had by consent of parties been consolidated and were heard together. The facts which appear in these two records are as follows: Daniel Stone by his will proven in May, 1865, devised jointly to Caleb G. Barrett and his wife, Sarah V. Barrett, the testator's daughter, his home-farm together with one hundred and fifty-six acres of land on the west side of Neal's run in the said county of Wood. On the 16th day of April, 1877, Caleb G. Barrett borrowed of John Buford six hundred dollars at twelve per cent. per annum, and gave his note for the principal and one year's interest, in all six hundred and seventy-two dollars, payable on April 16, 1878. A deed of trust was given on the said home farm, devised to Barrett and wife by her father, to secure the note, in which R. C. Tracewell was trustee. The deed was acknowledged by Barrett and wife on the day on which it bears date, April 16, 1877, but so far as the wife Sarah V. Barrett was concerned, the acknowledgment was fatally defective, in that it did not show, that the deed was fully or indeed in any manner explained to her.

This home-place was advertised for sale by the trustee, R.

C. Tracewell, on July 15, 1878. The sale was adjourned to August 12, 1878. Caleb G. Barrett and Sarah V., his wife, filed their bill and obtained from the judge of the circuit court of Wood county on August 9, 1878, an injunction forbidding the making of said sale. John Buford filed his answer admitting the above facts, but claiming that the loan was made in Belpre, Ohio, where the legal rate of interest was eight per cent. per annum. This answer was replied to generally and also specially, in which they deny, that this loan was made in Ohio. The court on March 17, 1879, pronounced the deed of trust void in so far as it conveyed the interest of Sarah V. Barrett in said home-farm, and perpetuated the injunction in so far as it forbid the sale of her interest in said home-farm to pay said debt. It also purged the debt of the usurious interest, but permitted it to stand for the money loaned and six per cent. interest thereon, and dissolved the injunction in so far as it forbid the sale of the interest of C. G. Barrett in said home-farm, and decreed the costs of the suit against Buford. The trustee, R. C. Tracewell, then again advertised the interest of C. G. Barrett in said home-farm of seventy acres, known as the Daniel Stone farm, and John Buford became the purchaser thereof at eight hundred dollars. R. C. Tracewell, the trustee, made him a deed therefor dated July 7, 1879, which was admitted to record July 12, 1879. In the meantime on the first Monday in August, 1878, Ann R. Tavenner and J. T. Tavenner, her attorney in fact, filed a bill in the circuit court of Wood county, against C. G. Barrett and Sarah V. Barrett, his wife and others, which bill was afterwards amended, and the facts appearing in this cause are as follows: Prior to the giving of this deed of trust to secure this debt to Buford, to-wit, on September 25, 1875, C. G. Barrett and Sarah V. Barrett, his wife, executed to W. W. Van Winkle and B. Mason Ambler, trustees, a deed of trust on this home-farm, the Daniel Stone farm of seventy acres, to secure a bond of two hundred and ninety dollars with interest from September 25, 1875, executed by Caleb G. Barrett and Sarah V. Barrett to the Life Insurance Company of Virginia. This deed was on the day on which it bears date acknowledged for recordation by C. G. Barrett and Sarah V. Barrett, his wife, before W. W.

Van Winkle, one of the trustees acting as a notary public. At any rate the name of the notary public before whom it was acknowledged, and the name of one of the trustees in the deed are identical. Afterwards on January 5, 1876, in a chancery suit in said circuit court, in which Lydia Butcher was plaintiff, and Ann R. Tavenner the widow of Thomas J. Tavenner and his children and heirs-at-law were defendants. J. T. Tavenner was appointed a commissioner to sell a certain tract of land belonging to Thomas J. Tavenner, deceased, in said county of Wood, containing thirty-seven and one half acres. This land was sold on July 15, 1876, and Ann R. Tavenner became the purchaser. This sale was confirmed by the court by a decree made August 17, 1876, and the commissioner, J. T. Tavenner, was ordered to make a deed to the purchaser, Ann R. Tavenner, when she paid all the purchase-money. Ann R. Tavenner then executed to J. T. Tavenner a power of attorney, which was duly recorded to sell the whole or any part of this thirty-seven and one half acres of land for her. And he thereupon on August 27, 1877, sold fifteen acres of this land to Caleb G. Barrett and Sarah V. Barrett, his wife, for six hundred dollars with interest from date. Three bonds of two hundred dollars each were taken for this purchase-money, each bearing date August 27, 1877, and payable to J. T. Tavenner with interest from date in six, twelve and eighteen months. J. T. Tavenner in taking these bonds was known to be acting as the agent and attorney in fact of Ann R. Tavenner. These three bonds were secured by a deed of trust, executed by Caleb G. Barrett and Sarah V. Barrett to C. B. Tavenner, conveying this home-place or Daniel Stone farm of seventy acres. Nine different judgments were also rendered against C. G. Barrett between May 24, 1875, and December, 1877, which were docketed. The principal of these judgments aggregated about four hundred and fifty dollars. On these judgments some payments had been made, but the payments were insufficient to pay off the costs and interest. Some of these judgments were against C. G. Barrett and wife, some against C. G. Barrett alone, and some against C. G. Barrett and a third party.

This being the state of the case Ann R. Tavenner and J.

T. Tavenner, her attorney in fact, filed their bill in the circuit court of Wood county at August rules, 1878, setting out these facts partially, and claiming a lien not only on this fifteen acres sold to C. G. Barrett and wife, but also claiming a lien on this Daniel Stone farm, of about seventy acres, for the payment of said six hundred dollars with interest from August 27, 1877, which was the purchase-money agreed to be paid for this fifteen acres of land, and which was secured to be paid by this deed of trust on the Daniel Stone farm of seventy acres. It set out the previous deeds of trust on this seventy acres in favor of The Life Insurance Company of Virginia and John Buford; said nothing about any difficulty as to either of these deeds of trust having been improperly acknowledged, but admitted their validity and stated, that the decree in favor of The Life Insurance Company of Virginia was a valid and subsisting lien on said home-farm of seventy acres; it named six of the nine judgments against C. G. Barrett, and filed abstracts of them with the bill; it made parties defendants to the suit not only C. G. Barrett and Sarah V. Barrett, his wife, but also the trustees and *cestuis que trust* in said deeds of trust, and said judgment-creditors named in the bill; and it prayed, that the cause might be referred to a commissioner to report all the liens on said tract of fifteen acres, and on said tract of seventy acres, the Daniel Stone farm, and the order of their priority, and that a decree of the sale of said land might be made to pay said liens, and for general relief. An order was made in vacation on August 14, 1878, after notice to parties, referring the cause to a commissioner to report the number, amount and priorities of the liens existing against the real estate of Caleb G. Barrett and Sarah V. Barrett, his wife, and the character of the same, whether by judgment or otherwise, and what real estate these parties were entitled to, and where situated, and any other matter deemed pertinent.

The commissioner made his report on the 29th of August, 1878. He reported as liens on the home-farm, or the Daniel Stone farm of seventy acres, the three deeds of trust, hereinbefore named, executed by C. G. Barrett and eight of the nine judgments against C. G. Barrett or C. G. Barrett and wife, or C. G. Barrett and another, stating the dates of the

judgments, the amount still due on them, against whom they were rendered, and when they were docketed, but omitted judgments named in the bill of *J. N. Murdoch* v. *C. G. Barrett and Sarah V. Barrett* for thirty-seven dollars and sixty-seven cents with interest from April 1, 1876, and the further sum of two dollars and ten cents, costs recovered before John Cook, a justice of the peace of Wood county on April 3, 1876, and duly docketed April 5, 1876. No reason is given for omitting it. I presume it was omitted, because it had been satisfied. He included in his report three other judgments not named in the bill. He also reported, that C. G. Barrett and wife owned only the lands named in the bill.

On October 17, 1878, C. G. Barrett demurred to the bill and the court sustained his demurrer, but granted leave to the plaintiff, Ann R. Tavenner, to amend her bill and make new parties; and the cause was remanded to rules, and the suit was ordered to abate as to J. T. Tavenner, attorney in fact, and to proceed in the name of Ann R. Tavenner, plaintiff. She filed an amended bill, in which she made defendants C. G. Barrett and Sarah V. Barrett, his wife, the trustees and *cestuis que trust* in said three deeds of trust, all the judgment-creditors named in the former bill or in the commissioner's report, as well as the defendants with C. G. Barrett in such judgments, and also J. T. Tavenner individually, and as commissioner of the court. It set out in detail all the facts which we have stated, and all the proceedings up to that time in said cause, except that it failed to call any attention to the defective execution of the deed of trust to R. C. Tracewell, trustee, for John Buford, or to the fact that the deed of trust executed to Van Winkle and Ambler as trustees, for The Life Insurance Company of Virginia was acknowledged before said Van Winkle as a notary public, and admitted to record only on this acknowledgment. But on the contrary, it spoke of the debt secured by this deed of trust as a lien then existing, and unsatisfied. It claimed, that the debt of the plaintiff, Ann R. Tavenner, of six hundred dollars with interest from August 27, 1877, was a lien on both the fifteen acre tract, for which this six hundred dollars was the purchase-money, and also on the home-farm, or Daniel Stone farm of seventy acres. The bill prayed, that

all these defendants should be required to answer this amended bill on oath, and that said report of the commissioner if proper and regular might be confirmed, or if necessary, that the same might be recommitted to a commissioner to ascertain and report all liens of any and every kind whatever existing against said lands, and the order of their priority, and that the court would decree a sale of said land to pay off all said liens, and for general relief. There are filed with this bill as escrows, to be delivered when the purchase-money is paid, a deed from the special commissioner, J. T. Tavenner, to Ann R. Tavenner for the thirty-seven and one half acres of land, and a deed from J. T. Tavenner, commissioner, and Ann R. Tavenner to C. G. Barrett and his wife, S. V. Barrett, for the fifteen acres being a part of said thirty-seven and one half acres sold to them. C. G. Barrett and wife filed a demurrer to the amended bill, in which no less than twenty-three causes of demurrer were assigned. This demurrer was overruled by the court. It will be noticed so far as is necessary in the opinion to be pronounced in this case.

The commissioner in his report before referred to states, that he reports that the plaintiffs claim and ask to be reported: First, that the deed of trust given by C. G. Barrett and S. V. Barrett to W. W. Van Winkle and B. M. Ambler, trustees, referred to as the first lien in this report is invalid for the reason, that the acknowledgment thereto was taken by one of the trustees, W. W. Van Winkle, a party to said deed, and a party in interest. Second, the deed of trust given by C. G. Barrett and S. V. Barrett, his wife, to R. C. Tracewell, trustee, to secure John Buford is invalid so far as it affects the interest of said S. V. Barrett for the reason, that there is no proper certificate of acknowledgment thereto as to her. Third, the judgment of *E. Clark* v. *C. G. Barrett and S. V. Barrett* is illegal bcause it is improper in law to render judgment against a married woman, a court of law having no jurisdiction, and a judgment so rendered does not bind her, and is not a lien on her real estate. The commissioner then reports what will be the order of these liens if these objections are well taken, which are submitted to the court. Though thus specifically noticed in this report no

notice of these objections to these liens is taken in the amended bill filed afterwards.

J. T. Tavenner filed an answer to this amended bill admitting the facts stated in the amended bill. The Life Insurance Company of Virginia, W. W. Van Winkle and B. M. Ambler filed joint and several answers. They assert, that the plaintiff, Ann R. Tavenner, through her agent J. T. Tavenner had full knowledge and notice of the existence of this deed of trust before any deed of trust was executed in favor of said J. T. Tavenner or Ann R. Tavenner by said Barrett and wife. C. G. Barrett and S. V. Barrett, his wife, filed joint and several answers. They deny on information and belief, that any part of these thirty-seven and one half acres sold in this suit against the heirs of Thos. J. Tavenner ever belonged to him, and therefore the plaintiff, Ann R. Tavenner, obtained no title to these thirty-seven and one half acres by her purchase and its confirmation by the court, and that she can not make a good title to them for the fifteen acres of land, a part of which she sold, and if the purchase-money was paid by the respondents it would be totally lost to them. And they also allege, that she has paid no part of the purchase-money of said thirty-seven and one half acres of land.

She says, that she signed the purchase-money bonds for these fifteen acres of land merely as the security of her husband, and that her separate estate is not bound for it. She claims a moiety of the home-place, the Daniel Stone farm of seventy acres, as her separate estate under her father's will. She also claims, that in executing the deed of trust in said home-farm to secure this six hundred dollars, the purchase-money of these fifteen acres of land, she did not convey her separate estate, but only surrendered her dower in her husband's moiety of said home-farm. She further claims, that both the other deeds of trust, the one to secure the Life Insurance Company of Virginia, and the other to secure John Buford, are invalid on account of the defect in the acknowledgment of them, which have been before pointed out, and especially, that the acknowldgement before W. W. Van Winkle, the trustee in the first deed of trust, was an illegal and void acknowldgement. She asserts, that the debt due Buford has been fully discharged.

C. G. Barrett admits the execution of and produces the paper, which was signed by J. T. Tavenner as commissioner and as agent of Ann R. Tavenner, which states, that these fifteen acres of land were sold to C. G. Barrett and his wife jointly, and in which he agreed to convey it to them, when the purchase-money should be paid. But Barrett asserts, that his wife never knew of the existence of this paper, till after this suit was brought. He claims, that he is entitled to have a good title to these fifteen acres of land, before he can be required to pay the purchase-money; that when he bought it, he believed he could get a good title for it; but this, he says, he is now advised, that he cannot do. He also claims, that his wife's separate estate cannot be bound for this purchase-money. He asks, that Ann R. Tavenner be required to answer and show the character of her title, that it may be enquired into by a commissioner, and if no good title can be made, that his contract for the purchase of these fifteen acres of land be annulled and his bonds surrendered. Sarah V. Barrett asks, that the home-place of seventy acres be partitioned between herself and her husband, and that only his portion of it be sold to pay the liens upon his interest in said lands; and if it should be shown, that Ann R. Tavenner can make a good title to these fifteen acres of land, that she be required to convey it with general warranty of title. These answers except that of the Life Insurance Company of Virginia, and of the trustees Ambler and Van Winkle, were all sworn to, and all of them were replied to generally.

After the sale on the 7th day of July, 1879, by the trustee, R. C. Tracewell to John Buford of the interest of C. G. Barrett in this Daniel Stone farm of seventy acres, it being one moiety thereof, for eight hundred dollars and its conveyance, Caleb G. Barrett and Sarah V. his wife, filed a bill in the circuit court of Wood county asking, that said sale might be set aside for various reasons alleged in the bill, but unsustained by any proof. The trustee, R. C. Tracewell, answered this bill stating, that he had sold this interest of C. G. Barrett in said farm at public auction to the highest bidder, and that John Buford was the purchaser at eight hundred dollars. As the land was sold under a deed of trust in favor of said Buford the trustee says, he only required the purchaser to

pay the costs of suit, the expenses of the sale, and the amount of the liens on said interest of C. G. Barrett prior to the deed of trust in favor of Buford. This amounted in all to five hundred and eleven dollars and sixty-two cents, and after paying the costs of the suit and sale there remained in his hands, this trustee, Tracewell, says, four hundred and seventy-nine dollars and sixty-two cents to be paid out as the court might direct. This answer was sworn to.

These two suits having been by consent consolidated and heard together, the court on October 18, 1879, overruled the exceptions to the report of the commissioner in the case of *Ann R. Tavenner* v. *C. G. Barrett et als.*, which exceptions have been lost out of the papers, and confirmed said report in all respects so far as the same applies to the liens upon the real estate of C. G. Barrett, their amounts and priorities, and did adjudge, order and decree, that Ann R. Tavenner do recover from C. G. Barrett and S. V. Barrett the sum of six hundred dollars with interest thereon, from the 27th of August, 1877, until paid; and the court was of opinion, that the said unpaid purchase-money constituted a first lien on the said tract of fifteen acres, and did order that unless the same was paid to Ann R. Tavenner together with the costs of her said suit within thirty days from the rising of the court, then a special commissioner named, after a specified advertisement should sell such tract of fifteen acres on certain specified terms. But before executing this order said commissioner was required to give a bond in the penalty of one thousand two hundred dollars conditioned according to law.

Upon the questions and objections in said report submitted to the court for its decision, the court did adjudge, order and decree, that the deed of trust given by C. G. Barrett and S. V. Barrett to W. W. Van Winkle and B. M. Ambler, trustees, to secure the Life Insurance Company of Virginia, described in the papers in these causes, bearing date and duly admitted to record on the 25th day of September, 1875, is invalid, null and void, and of no effect whatever. It also decided, that the deed of trust given by C. G. Barrett and S. V. Barrett to R. C. Tracewell, trustee, to secure John Buford described in the papers of these causes, bearing date and duly admitted to record on the 16th day of April, 1877,

is invalid, null and void as to the interest of S. V. Barrett thereby intended to be encumbered. And it appearing to the court, that the trustee, R. C. Tracewell, has sold the undivided interest of C. G. Barrett in the said tract of seventy acres, and that the proceeds arising from said sale after paying the costs attending the same, and the costs of the second named of said suits amount to seven hundred and sixty-eight dollars, the said trustee was ordered to pay the same in satisfaction of a judgment and deed of trust-lien in favor of the plaintiff C. G. Barrett in the order of their priority, as settled in said report of said commissioner. The court reserving for the present its decision as to the liens on the interest of S. V. Barrett in the seventy acre tract described in her papers in this cause. From this decree The Life Insurance Company of Virginia, Caleb G. Barrett and Sarah V. Barrett have each obtained an appeal and *supersedeas*.

*Van Winkle & Ambler* for the Life Insurance Company cited the following authorities: 12 W. Va. 313; 2 Kelly's Stat. ch. 153 §§ 35, 36; Code ch. 125 §§ 35, 36; 7 W. Va. 476; *Snyder* v. *Martin*, 16 W. Va.; 1 Dan. Chy. Pr. 191–581; 1 H. & M. 470; 4 Russ. 224; 11 Rep. 153; 1 Dan. Chy. Pr. 404; Story Eq. Pl. §§ 509, 510, 541; Metf. Tyl. Eq. 418, note; Adams Eq. 299 *et seq*.; Dan. Chy. Pr. (1879) 425, 426, note 6; 17 How. 130; 32 Gratt. 170; *Id*. 185; 26 Gratt. 207; 13 Gratt. 383; 11 W. Va. 342; *Worthington* v. *Staunton*, 16 W. Va.; 14 W. Va. 738; 23 Gratt. 383; Story Eq. Pl. 257 and notes; 1 Dan. Chy. Pr. 335–385; 14 W. Va. 273; 10 W. Va. 321; 11 W. Va. 217; *Burlew* v. *Quarrier*, 16 W. Va.; 9 W. Va. 552; Code p. 448 and notes; *Greenburo* v. *Evans*, 15 Gratt.; 2 Leigh 425; *Id*. 84; 2 Min. Inst. 847; 11 Leigh 294; 5 Gratt. 233; Gil. 235; 4 Gratt. 73; 14 Bkpt. Reg. 513; 18 Gratt. 387; 19 Gratt. 592; *Id*. 720; 21 Wall. 185; 4 Greenl. Ev. § 333; 26 Gratt. 124; Code p. 629 § 5; 1 Dan. Chy. Pr. 197, 198; Code ch. 76 §§ 1, 2; 2 Min. Inst. 222; *Id*. 286 and cases cited; 1 Lom. Dig. 424, 425; 8 Gratt. 260; 9 W. Va. 469; 14 Gratt. 102; 6 Leigh 269; 2 Min. Inst. 779 and cases cited.

*L. N. Tavenner and Walter S. Sands* for appellees cited the

following authorities: Proff. Not. p. 33 § 35 and cases cited; 38 Tex. 645; 46 Mo. 404; 20 Ia. 231; 13 Mich. 329; 20 Me. 413; 13 W. Va. 659; Code ch. 125 § 36; Kelly's Stat. ch. 153 p. 885; 7 W. Va. 390.

GREEN, JUDGE, announced the opinion of the Court:

The appeal before us is from a decree in two causes, which by consent of parties were consolidated and heard together. We will first consider so much of the decree of October 10, 1879, which was appealed from and which was based in part on the proceedings in the second of these cases heard together and consolidated by consent. This was the cause of C. G. Barrett and wife against John Buford and R. C. Tracewell, trustee. It is obvious, that the circuit court did not err in awarding the injunction to the sale of the Daniel Stone farm of seventy acres, which had been advertised by the trustee, R. C. Tracewell, under the deed of trust dated April 16, 1877, for the benefit of John Buford. Nor did it err in the decree in that cause made on March 17, 1879, when it declared, that this deed of trust from C. G. Barrett and wife to R. C. Tracewell, trustee, was not the act and deed of Sarah V. Barrett, the wife, but was the deed of C. G. Barrett, the husband. This was obviously a correct conclusion. The certificate on which this deed of trust was admitted to record was as follows:

"STATE OF WEST VIRGINIA, WOOD COUNTY, ss.:

"Before me, the undersigned, a justice of the peace in and for said county and State, personally came C. G. Barrett and Sarah V. Barrett, his wife, and acknowledged the execution of the foregoing and annexed deed, bearing date April 16, 1877. And I further certify that I examined, separate and apart from her said husband, Sarah V. Barrett, and she acknowledged that she had voluntarily signed the foregoing deed, and that she did not wish to retract the same.

"In witness whereof I have hereunto set my hand and seal.

"J. P. TRACEWELL, *J. W. C.* [SEAL.]"

The certificate was sufficient so far as C. G. Barrett, the husband, was concerned. But it was obviously fatally defective so far as it purported to be a privy examination and certificate of acknowledgment of this deed of trust on the part

of Sarah V. Barrett, the wife. It does not appear from this certificate, that the wife had this deed of trust fully explained to her, or indeed that it was explained to her at all. This is a fatal defect, and renders the deed void as to her. See *Watson* v. *Michael and Ice, supra*, p. 568.

The circuit court therefore properly decided, that the injunction theretofore awarded in this cause be perpetuated as to the rights, interest and estate of said Sarah V. Barrett in said Daniel Stone farm of seventy acres, and that this deed was properly declared void by the court in said decree, so far as it purported to convey her said interest in said farm. The court also in said decree properly purged the debt secured by said deed of trust of the usurious interest contained in it, the real debt being only six hundred dollars with interest at the rate of six per cent per annum from April 16, 1877; there being no proof in this cause that said loan was a contract made in Ohio. And the said deed of trust was a valid security so far as it conveyed the moiety of said Daniel Stone farm of seventy acres, which belonged to Caleb G. Barrett her husband. The court in said decree properly adjudged, that said injunction to the sale thereof, which had been granted so far as the rights and interest of Caleb G. Barrett in said trust were concerned, being one half thereof, be dissolved except as to said usurious interest, of which the debt had been purged, and it properly decreed, that the defendant, John Buford, do pay unto said Sarah V. Barrett her costs about her suit in this behalf expended. This was obviously a final decree in this cause, and completely ended every controversy in this cause.

After this cause was thus ended, the trustee, R. C. Tracewell, sold under the provisions of this deed of trust, the interest of Caleb G. Barrett, it being a half interest in and to this Daniel Stone farm of about seventy acres, for the sum of eight hundred dollars cash to John Buford, and made him a deed therefor dated July 7, 1879, which was duly recorded July 12, 1879. Thereupon Caleb G. Barrett and Sarah V. Barrett brought another suit against R. C. Tracewell, trustee, and John Buford, the purchaser, in the circuit court of Wood county asking, that this sale might be set aside and this deed canceled, and that John Buford might be enjoined

from selling or conveying this land or any part thereof, and that the said trustee, R. C. Tracewell, might be enjoined from paying out any of the purchase-money of said land; and asking further, that this cause be consolidated with that of Ann R. Tavenner and C. G. Barrett and others pending in said court. The injunction was awarded as prayed for.

The answer of R. C. Tracewell, the trustee, to this bill under oath denies the allegations of the bill and says, that this interest of Caleb G. Barrett was sold pursuant to the provisions of the deed of trust. There being no proof offered of the allegations in the bill, this bill in the decree of October 18, 1879, should have been dismissed, the injunction in this cause being first dissolved, and the plaintiffs, C. G. Barrett and Sarah V. Barrett, should have been decreed to pay to the defendants their costs expended in said second suit against them. But instead of doing this, the court by this decree of October 18, 1879, directed the proceeds arising from said sale, after the payment of the costs of the proceeding in the cause of *C. G. Barrett and wife* v. *R. C. Tracewell and John Buford*, and the costs of the sale, to be paid out in satisfaction of the judgments and other liens on the interest of said Caleb G. Barrett in the said Daniel Stone farm of seventy acres, in the order settled by the report of the commissioner in said cause of *Ann R. Tavenner* v. *C. G. Barrett et als.*, which was confirmed. This seems to me to be an obvious error in the circuit court.

The first suit of *C. G. Barrett and wife* v. *R. C. Tracewell, trustee, and John Buford* had been finally ended by this decree of March 17, 1879, and John Buford by this decree had been properly required to pay the costs of this suit. Yet in this decree of October 18, 1879, the court authorizes in effect, that the trustee, R. C. Tracewell, shall pay the costs of this suit out of the funds arising from the sale of Caleb G. Barrett's interest in said Daniel Stone farm. Thus really making Caleb G. Barrett pay all the costs of this first suit, in which he had succeeded, and whose costs had been decreed to be paid by said Buford. Again it was an obvious error for the court in this decree of October 18, 1879, which was appealed from to order, that any portion of the purchase-money arising from the sale of said Caleb G. Barrett's interest in said

Daniel Stone farm, which was in the hands of the trustee
R. C. Tracewell, should be applied to any of the judgments
or prior liens against the land, or interest of said C. G. Barrett in said Daniel Stone farm. The whole of this fund in
the hands of the said trustee, R. C. Tracewell, after the payment of the expenses of the sale, should have been applied to
the payment of the debt due John Buford, secured by the
deed of trust, after having first purged such debt as the court
had done of the usurious interest. John Buford at this sale
of the interest of Caleb G. Barrett in this Daniel Stone farm
of seventy acres, had bought this interest at eight hundred
dollars. What was the interest he so purchased? Obviously it was the interest of Caleb G. Barrett conveyed by his
deed of trust of April 16, 1877, which was one undivided
moiety of the said Daniel Stone farm of seventy acres, subject to all judgments, which had been rendered against him
to April 16, 1877, and which had been docketed, as well as
all other liens shown by the record to be on the said interest
of said Caleb G. Barrett in said Daniel Stone farm by deed
of trust or otherwise. The interest of Caleb G. Barrett in
the said Daniel Stone farm of seventy acres, in the hands of
John Buford the purchaser, ought to be subjected by sale to
the payment of all the docketed judgments and other liens,
which were upon it on April 16, 1877, and which remain
unsatisfied; and this should yet be done in the further progress of the case of *Ann R. Tavenner v. C. G. Barrett and
others*, when the same is remanded to the circuit court of
Wood county, as it must be for further proceedings. There
was really no propriety in consolidating this cause with the
cause of *C. G. Barrett and others* v. *Tracewell, trustee, and
John Buford.* This last named cause was ready for a final
decree, simply dissolving the injunction, which had been
awarded, and dismissing the bill at the cost of the plaintiff.
Orders to consolidate causes in equity should rarely if ever
be made. See opinion of Judge Carr in *Claiborne* v. *Gross
et al.* and *Wimbish* v. *same,* 7 Leigh p. 339. Where it is
proper chancery causes should be heard together, but ought
not except perhaps in a few special cases to be consolidated.

We will now examine the decree of October 18, 1879,
which was appealed from to ascertain, whether any portions

of it based upon the proceedings in the case of *Ann R. Tavenner* v. *C. G. Barrett and others* are erroneous. But before doing so we will consider the proceedings in this cause prior to said decree, and determine, whether any of them are erroneous. The bill was originally filed by Ann R. Tavenner and J. T. Tavenner, her attorney in fact, against Sarah V. Barrett and others. We will for the present assume, that the facts set out in this bill showed a case, in which a court of equity ought to have granted relief, if the suit had been brought by Ann R. Tavenner alone, and if J. T. Tavenner, her attorney in fact, had not been joined with her as a co-plaintiff. The circuit court was of opinion, that this joining of J. T. Tavenner, her attorney in fact, as a co-plaintiff with her of itself rendered the bill liable to demurrer; and accordingly by its decree of October 17, 1878, sustained a demurrer to this bill, but gave leave for the plaintiff, Ann R. Tavenner, to file an amended bill, and ordered the suit to abate as to the plaintiff J. T. Tavenner, attorney in fact, and to proceed in the name of Ann R. Tavenner.

It is unquestionably true, that a person who is a mere agent in a transaction ought not to be made a party to a bill, as for instance an auctioneer, who has sold an estate the sale being the matter of controversy. See *Long* v. *Colman*, 10 Beav. 370; *White* v. *White*, 5 Gill. 359. So an agent for the purchase of land is not a proper party to a bill against the principal for a specific performance, although the agent signed the memorandum for the purchase in his own name. See *Jones* v. *Host*, 1 H. & M. 470; *Kingley* v. *Young*, Coop. Eq. Pl. 42. And it is a good ground of demurrer to the whole bill, that a person, who has no interest in a suit and has no equity against the defendant, is improperly joined as a plaintiff. See *Clarkeson* v. *De Speyster*, 3 Paige 336; *Little* v. *Buie*, 5 Jones Eq. (N. C.) 10; *King* v. *Galloway*, 5 Jones Eq. (N. C.) 128; *Wright* v. *Santa Clara Mining Association of Baltimore*, 12 Md. 443; *Westfall* v. *Scott*, 20 Ga. 233. But on the other hand there is a class of persons called generally agents, who are nevertheless properly parties to a suit in equity brought by the principal. The agents to which I refer are trustees. The general rule in such cases is, that trustees as well as the *cestuis que trust* are necessary parties in

suits in equity. And as a general rule the trustee, who has the legal title must be made a party. The reason for this rule is, that he holds the legal title and should therefore be made a party, though he has no beneficial interest in the subject of controversy; and this rule applies, whenever the legal right to sue for the thing demanded is in a different party from the one claiming the beneficial interest. The one thus holding the legal right to sue is so far as this rule goes in such case regarded as a trustee, who should be made a party. Thus when a bill is filed for the specific performance of a covenant under the hand and seal of one for the benefit of another, the covenantee though he has no beneficial interest, must be a party to a bill brought by the person for whose benefit the covenant was made against the covenantor. See *Cooke* v. *Cooke*, 2 Vern. 36; *Cope* v. *Parry*, 2 Jac. & W. 538. So in *Miller* v. *Whittaker*, 23 Ill. 453, Miller acting as an agent for Flinchburgh sold a certain patent to Whittaker, and as the consideration thereof he gave him certain notes payable to Miller personally, and made to him deeds for certain lands conveying the lands to Miller personally. In a suit in equity brought by Miller to set aside these deeds and contract as fraudulently procured by Miller, it was held, that Flinchburgh the principal was a necessary party. There was not even a suggestion, that the agent, Miller, who was necessarily regarded as a trustee for Flinchburgh was not a proper party to such a suit. The distinction seems to be, that when there is a personal covenant under hand and seal, or a personal conveyance by deed to the agent, which is really intended for the benefit of the principal, though he be not named in the covenant or deed, yet as in such case the agent is a real trustee for the principal, in a suit involving the enforcement of such covenant or deed, or for the annulling of either, the agent or trustee as well as the principal or *cestui que trust* must in effect both be made parties.

But the same rule does not apply to agreements not under seal, where the one party is merely the agent of another, and makes the agreement as such, though in his own name. In such case it is not necessary in suing to enforce such agreements not under seal or to set them aside in equity to bring the agent before the court, for either in law or in equity the

principle may in such case interpose and supersede the right of the agent, and claim to have the contract performed to himself, although made in the name of the agent. See *Crocker* v. *Higgins*, 7 Conn. 342; *Duke of Norfolk* v. *Worthy*, 1 Camp. N. P. 337; *Bethune* v. *Fairbrother*, cited in 5 M. & S. 385.

Applying these principles to the case before us it would seem, that J. T. Tavenner was not only a proper but a necessary party to the bill in this cause. One of its main objects was to enforce a deed of trust, dated August 27, 1877, executed by the defendants Caleb G. Barrett and Sarah V. Barrett, his wife, to C. B. Tavenner, trustee, to secure three bonds of two hundred dollars each with interest from date, which were made payable to J. T. Tavenner individually, but which it was alleged were given for land of the plaintiff, Ann R. Tavenner, sold by J. T. Tavenner her attorney in fact to Caleb G. Barrett and Sarah V. Barrett, his wife. The legal title to these three bonds was in J. T. Tavenner, but he was a mere trustee holding the legal title to these three bonds for the use of Ann R. Tavenner, and in a suit in equity to enforce them it was necessary on the principles, which we have laid down, that both she, the *cestui que trust*, and he, the trustee, should be parties to such suit. J. T. Tavenner, the trustee, holding the legal title of these bonds, and being a necessary party to a suit in equity to enforce their collection brought by the beneficial owner of these bonds, Ann R. Tavenner, and there being no controversy between them, but he admitting that he had these bonds executed to him really for the use of Ann R. Tavenner, it would follow as of course, that she could make him a defendant in said suit; or he as such trustee might properly unite with her as co-plaintiff, just as the assignor of a bond in a suit in equity brought to enforce it by the assignee, may be made a defendant; or the assignee and assignor of the bond, if there be no controversy between them, may properly unite as co-plaintiffs in a suit in equity to enforce the collection of such bond. In *Nellthorpe* v. *Holgate*, 1 Collyer R. 218 the vice chancellor says, in a suit in which Sir John Melthorpe and Mr. Holmes were co-plaintiffs, and Mr. Holgate and others were defendants: "There is not nor ever has been any dispute or ques-

tion between Sir John Melthorpe and Mr. Holmes. If then one of the plaintiffs in the original suit was a proper and a necessary plaintiff, and there was no conflict of interest between them, and each was concerned and interested in the subject of the suit, how could it be improper that they should be co-plaintiffs? The ordinary rule against making an agent a party has nothing in common with a case such as this."

My conclusion therefore is, that the circuit court of Wood county erred in its decree of October 17, 1878, in sustaining the demurrer to the original bill, because J. T. Tavenner was not made a party plaintiff in the cause with Ann R. Tavenner. It is true, that he is called in the bill her attorney in fact, but the bill on its face shows, that he was the trustee and holder of the legal title of the three bonds of two hundred dollars each, payable to him as obligee, and that he held them as such trustee for the co-plaintff, Ann R. Tavenner. But this error was of course not prejudicial to the defendants, the appellants in this Court, and it was really corrected by granting leave to Ann R. Tavenner to amend her bill and make J. T. Tavenner a defendant. This was perhaps his appropriate position, at least it was clearly a ligitimate position for him to hold, he being as we have seen, a necessary party to the suit.

The amended bill, which was filed was an improvement on the original bill. It set out the case of the plaintiff more clearly and more fully, and made certain other parties defendants, which the commissioner's report showed were proper parties defendants to the cause. But it was obviously a suit for substantially the same purposes and based on substantially the same facts, and asking substantially for the same relief as the original bill, and was clearly a proper amended bill and not any new suit as has been claimed by the appellant's counsel. This amended bill was demurred to by Barrett and wife, who assigned no less than twenty-three grounds of demurrer. But it seems to me clear, that this amended bill alleged facts, which if true, clearly showed, that the plaintiff had a right to the equitable relief against Barrett and wife which it sought. So far as they were concerned the substance of the bill was, that in a certain chancery cause pending in that court, the court had decreed the sale of thirty-

seven and one half acres of land, which the plaintiff bought and the sale had been confirmed by the court, thus vesting in the plaintiff the equitable title to this thirty-seven and one half acres of land; that she, by her attorney in fact, then sold fifteen acres of this land to Barrett and wife for six hundred dollars, for which they gave their bonds payable to the person, who as her attorney in fact had sold this land to them; that thereupon they secured the payment of the purchase-money by executing a deed of trust on a tract of seventy acres of land owned by them, which deed of trust was duly acknowledged by both Barrett and his wife and recorded. The person to whom these bonds were payable, and whom Barrett and wife knew was acting as the agent of the plaintiff, was also the commissioner of the court, who had sold this land to the plaintiff, and he was by the order of the court to make a deed for it, when the purchase-money was all paid; and his contract with Barrett and wife was, that he would make them a deed for these fifteen acres of land when the purchase-money was all paid. Barrett and wife had paid no part of this six hundred dollars, which by their bonds they had agreed to pay, and which they had secured by a deed of trust on the seventy acres of land, which they owned jointly. No deed had been made to them for the fifteen acres of land, which they had bought, and none was to be made to them till all the purchase-money was paid. I cannot see why the plaintiff had not a right in a court of equity to enforce the payment of this purchase-money for these fifteen acres of land by asking its sale, as no deed had been made to Barrett and wife for it.

This equity is constantly enforced in a court of equity; and land sold to pay the purchase-money by order of the court, where no deed had been made to the purchaser. Nor do I see any difficulty in the court's directing the sale of the seventy acres of land to pay the six hundred dollars, which were by the deed of Barrett and wife secured upon it, though the bonds were payable to C. B. Tavenner, they being really for the use of the plaintiff, and in point of fact given for land sold by her to Barrett and wife. Nor am I able to see, that the payment of these bonds can not be enforced because the plaintiff did not sign any memorandum in writing showing,

that she had sold these fifteen acres of land for these bonds. Barrett and wife had signed not only these bonds, but also the deed of trust to secure them. The statute of frauds only requires, that the agreement sought to be enforced should be signed by the parties to be charged therewith, and it need not be signed by the other party. I am unable to see, that any fraud was committed by the commissioner of sale, J. T. Tavenner, in making this arrangement with Barrett and wife. In the suit, in which he was acting as commissioner, the parties to the suit could only be interested in the payment of the purchase-money of this land sold. It was immaterial whether this payment was made by the original purchaser, the plaintiff, or by these sub-purchasers. Such changes of the parties to whom the court's commissioner is to make the deed is of constant occurrence, and I have never supposed, that there was any impropriety in it much less any fraud.

The fact, that the bonds for the purchase-money were given to J. T. Tavenner instead of being given to the plaintiff, Ann R. Tavenner, to whom they should have been given, should not embarrass a court of equity, who never regard form, but always look to substance, in enforcing the payment of this purchase-money. C. B. Barrett's wife, Sarah V. Barrett, is unquestionably bound by the bonds, which she executed, and by the deed of trust which she gave on her separate property, and in which her husband united. She would have been so bound though she had been her husband's security merely, which she was not. There is in this State no sort of necessity in order to bind her separate estates, that these bonds should so state on their face. If given for a valuable consideration, as they were, they bound her separate estate. See *Radford et al.* v. *Carwile,* 13 W. Va. p. 572. It is obviously immaterial, whether the plaintiff when she sold this land to Barrett and wife had only an equitable or a legal title thereto; in either case the purchase is binding on the purchasers. These views are really a sufficient answer to all of the twenty-three grounds of demurrer assigned to this bill, except those which are based on the idea, that the plaintiff was bound to tender with her bill to Barrett and wife a deed for these fifteen acres of land with general warranty of title.

The contract set out in the amended bill is stated to have been made by Barrett and wife with J. T. Tavenner, who, by a regular power of attorney, executed by the plaintiff and duly recorded was authorized to sell said land for the plaintiff; and this contract was, that in consideration of six hundred dollars with interest from the date of the contract April 17, 1877, to be paid in six, twelve and eighteen months, secured by the bonds of the purchasers, and a deed of trust on seventy acres of land belonging to them jointly. Plaintiff sold to said Barrett and wife a portion of said land which she had bought of J. T. Tavenner, commissioner of this Court but, for which she had no deed, though the sale had been confirmed by the circuit court. The portion sold contained fifteen acres, and is described by metes and bounds in the amended bill; and the bill states, that no part of this purchase-money has been paid, and tenders a deed executed by the said J. T. Tavenner, special commissioner in said case, and by Ann R. Tavenner and J. T. Tavenner, her attorney in fact, which deed contained a special warranty of title, and the bill states is offered as an escrow to be delivered to the purchasers on the payment by them of the purchase-money.

Now as I understand the law it was not necessary, that any deed should have been tendered to the purchasers of this land either before the insitution of this suit, as the appellee's counsel insists, or with the bill. All that was necessary, according to the terms of the contract stated in the bill, was for the plaintiff to make a deed in accordance with her contract, when the purchasers Barrett and wife paid the purchase-money. If the bill had shown on its face, that she never could have made such a deed as the contract called for, as for instance if the bill had been filed by an assignee in bankruptcy and the contract showed, that the bankrupt had bound himself to insert in the deed certain covenants, such contract could not be specifically enforced unless the assignee in bankruptcy was willing to give such covenants personally. But so liberal is the court of equity in such a case, that though the bankrupt was unable or not obliged to execute such covenants as he had agreed to do, yet the court at the instance of the assignee of such bankrupt would enforce such contract specifically, if the assignee himself would

agree to execute such contract in lieu of the bankrupt. See *Powell* v. *Lloyd,* 2 Y. & J. 371.

To justify the court in sustaining a demurrer to a bill for specific performance, the ground of demurrer must be a short point, upon which it is clear that the bill will be dismissed with costs at the hearing. If the evidence to be taken is such as may sustain the relief asked with some modifications the demurrer ought to be overruled, and the case should stand until the hearing to be then disposed of on its merits. See *Brooke* v. *Hewitt,* 3 Ves. jr., 253. It is not necessary, that the bill for a specific performance brought by a vendor should show, that he had a valid legal title to the land sold; on the contrary the bill could not be demurred to though it appeared on the face of the bill, that he not only did not have a good legal title to the land, but that he did not have to a portion of the land any title legal or equitable, and that he never could acquire a good title thereto, provided it appeared, that the portion to which he could never acquire a good legal title was an insignificant portion of the land sold. In such cases, the court often decrees specific performance on the application of the vendor or his making compensation for the insignificant portion of the land, which he agreed to sell and to which he had not and could not acquire a title.

Generally in such cases time is not considered of the essence of the contract; and accordingly it is not generally regarded as material, whether the title of the plaintiff was a good title, when he made the contract of sale or when he brought his bill for a specific performance, and he is permitted by the court to make out his title at any time before the report on his title, and if he can do so though his title was imperfect when the bill was filed, he will be entitled to a decree for a specific performance. See *Bennet College* v. *Carey,* 3 Bro. C. C. 390. The court accordingly often allows time for the completion of his title by the vendor, and has more than once allowed the vendor time to get an act of Parliament to make good his title. *Lord Stourton* v. *Meers,* cited 2 P. Wms. 630; *Lord Braybroke* v. *Inskip,* 8 Ves. 417–436; *Coffin* v. *Cooper,* 14 Ves. 205. And when upon the face of the contract there was difficulty in the plaintiff's title, Vice

Chancellor Wood refused on demurrer to stop a suit for specific performance on the ground, that the act of Parliament contemplated had not been obtained. *Devenish* v. *Brown*, 26 L. J. ch. 23. The courts grant indulgence in point of time for getting over any difficulties in matters of conveyance, as much when the vendor is plaintiff as when the suit is instituted by the purchaser. *Duke of Beaufort* v. *Glynn*, 2 Sm. & G. 213.

These cases are ample to show, that there is no necessity in a suit for specific performance brought by a vendor for him to tender a good deed or any deed in with his bill in order to make it good on demurrer. And therefore even if in this case he was bound to make a general warranty deed, his tendering a special warranty deed would not have made his bill bad on demurrer; but at the hearing the court would require him before receiving the purchase-money to execute a deed with general warranty, which the plaintiff could of course do. In this case the answers of the defendants, Barrett and wife show, that they were entitled by the contract to a deed with only special warranty. The undisputed law is, that as a general rule upon an agreement for the sale of land the vendor, though nothing be said in the contract on the subject, is considered as contracting for a general warranty. See *Rucker* v. *Lowther*, 6 Leigh 259. The law is thus stated in 2 Th. Coke Lit. 325 n. (G. 3): "With respect to the persons who are bound to enter into these covenants it may be observed in general, that all persons who convey lands whereof they are seized to their own use, are bound to enter into the usual covenants for the title of the land conveyed. But where the estate is sold by trustees under a will, a purchaser is not entitled to covenants for the title. And the same rule applies where an estate is sold under an order of a court of equity. See *Wakeman* v. *The Dutchess of Rutland*, 3 Ves. jr. 505, 506. In both cases the purchaser is entitled to a covenant from the vendors, that they have done no act to encumber the estate, a special warranty substantially."

The contract of sale in this case filed with the answers of C. G. Barrett and Sarah V. Barrett, his wife, is as follows: "This is to show, that I have this day sold C. G. Barrett and Sarah V. Barrett, his wife, the following described piece of

land, (its boundaries are then set out at length, and the agreement proceeds thus), containing fifteen acres more or less for the sum of six hundred dollars. I have received the notes of said Barrett and wife at six, twelve and eighteen months for the sum of two hundred dollars each with interest, and upon payment of the sum in full I agree to make to C. G. Barrett and S. V. Barrett a deed for the above mentioned tract of land August 27, 1877." Signed "J. T. Tavenner commissioner and agent for A. R. Tavenner." Now when we remember, that Ann R. Tavenner had purchased this land of J. T. Tavenner as the commissioner of the circuit court of Wood county in a certain chancery suit, and that this sale had been confirmed, but no deed, had been made to her by J. T. Tavenner, the special commissioner, but she by a power of attorney had authorized him to sell it for her, it seems to me clear, that the understanding of the parties as shown by this written contract was, that J. T. Tavenner as such special commissioner of the court would with the assent of Ann R. Tavenner upon the payment of the purchase-money in full make a deed as such special commissioner to Barrett and wife. This seems to me to be shown by the wording of this contract taken in connection with the signature thereto, "J. T. Tavenner, commissioner." So understanding this contract, the plaintiff in her bill tendered as an *escrow*, to be delivered on the payment of this purchase-money, a deed duly acknowledged for these fifteen acres of land, precisely such as this contract required, that is a deed with special warranty of title. For if they were to get a deed from J. T. Tavenner as special commissioner of sale in said chancery suit, they were of course to get it without general warranty, as we have shown. And J. T. Tavenner as such special commissioner could alone have made a deed conveying to them the legal title of this land; for the legal title of it as known to the parties was not in Ann R. Tavenner the vendor. The contract in effect was, that Barrett and wife should be substituted for Ann R. Tavenner in the purchase of these fifteen acres of land from J. T. Tavenner, special commissioner in said chancery suit, and on the payment of the purchase-money the deed of this special commissioner was to be made directly to Barrett and wife, and of course only with special

warranty of title.   It is true the answer of Sarah V. Barrett pretends, that she was not a joint purchaser with her husband of these fifteen acres of land, and that she never saw this contract till after this suit was brought.   But that the real contract was expressed correctly on the face of this contract seems to me obvious.   Barrett and wife gave on the same day this contract was dated their joint bonds for the purchase-money of these fifteen acres of land, the bonds stating, that they were given for land purchased that day of Tavenner.   These bonds on their face being joint bonds, must be construed as having been given for land jointly purchased, and as a still further evidence thereof, this purchase-money was secured by a deed of trust executed the same day by Caleb G. Barrett and Sarah V. Barrett conveying not the interest of Caleb G. Barrett in the Daniel Stone farm, but conveying the Daniel Stone farm itself, which was owned by Caleb G. Barrett and Sarah V. Barrett, his wife, jointly. The defendants, Caleb G. Barrett and Sarah V. Barrett, having then a right only to a special warranty deed, the affirmative relief asked for in their answer, that this contract may be canceled because the vendor, Ann R. Tavenner, can not make a good title against all the world to these fifteen acres of land is such relief as on the face of their answer it appears they are not entitled to, and the prayer of said answer, that a commissioner should report on the title of the plaintiff could not on the face of this answer be granted. For as they had agreed to take such title to this land as Ann R. Tavenner had, and such as could be conveyed to them by the special commissioner, J. T. Tavenner, it was immaterial, whether this title was good or not; it was all that they contracted for.

I omitted to notice some of the other grounds of demurrer to the amended bill in the case, because they appeared to me to be frivolous, and because they have not been insisted in by the appellant's counsel in this Court.   What I have said with reference to this amended bill is a full answer to all the objections to it set out in the demurrer, and in the twenty-three causes of answer assigned so far as they were on any degree plausible.   Those not replied to I regard as having been abandoned by the appellant's counsel in his argument in this Court.

We will now further consider, whether there be any other errors in the decree of October 18, 1879, which was appealed from.    This decree overruled the exception to the commissioner's report, which had been made prior to the filing of the amended bill, and confirmed said report and ordered certain moneys to be paid out in the order of priority, which had been fixed by said report.    This it seems to me was all obviously erroneous.    After this report had been filed, the court had sustained a demurrer to the bill and had given leave to the plaintiff, Ann R. Tavenner, to file an amended bill and make numerous necessary parties defendants, who when said report was made were in no manner before the court.    This amended bill was filed, and no less than six new parties were made defendants all of whom had a direct and immediate interest in the said report of the commissioner, and none of whom were before the court when said report was made, or had any opportunities of controverting it while it was being made out by the commissioner, not having been in any way notified, that any such report was being made.    It seems therefore to have been clearly error to have confirmed this report.    The very object in filing the amended bill was to give these six parties an opportunity to be heard, before their rights were acted upon by the court. But what opportunity was really afforded them, when they were by the action of the court denied all opportunity of being heard before a commissioner, before whom alone it was possible to show, that there were errors in this report ? For the errors likely to occur in such a report are not errors of law, which would appear on the face of the report, but are errors of fact as to the amount of the debts, which were liens on the lands of the defendants, Barrett and wife.    This cause ought by the decree of October 18, 1879, to have been referred back to a commissioner to ascertain the liens on the lands in the bill named and their priorities, and with instructions by the court in reference to all matters, which could then have been properly determined by the court.

The portion of said decree principally complained of by the appellants, The Life Insurance Company of Virginia, in this case is, in these words: " The court doth decide, adjudge, order and decree, that the deed of trust given by C. G. Bar-

rett and S. V. Barrett to W. W. Van Winkle and B. M. Ambler, trustees, to secure The Life Insurance Company of Virginia described in the papers in this cause, bearing date and duly admitted to record on the 25th day of September, 1875, is invalid, null and void and of no effect whatever." This decision was based on the fact, that this deed was acknowledged by both the grantors before W. W. Van Winkle, a notary public, and on this acknowledgment only was admitted to record. And W. W. Van Winkle being one of the trustees or grantees in said deed, this acknolwedgment and recordation of this deed was regarded by the court as invalid. The appellant's counsel insist, that the court ought not and could not properly determine this question in this cause in any way, because the bill filed by Ann R. Tavenner and J. T. Tavenner expressly admitted the validity of this deed of trust as a subsisting and unsatisfied lien. Yet these plaintiffs when the cause was before the commissioner by their attorney raised this question for the first time, and had it reported at their instance to the court. After this when the amended bill was filed, the plaintiff Ann R. Tavenner makes no suggestion in her bill, that this deed of trust is invalid, but admits that it is valid and a subsisting lien. But Sarah V. Barrett in her answer to this amended bill says, that " she is advised and informed, that by reason of the acknowledgment of said deed having been taken by W. W. Van Winkle, a notary public, who was the same W. W. Van Winkle who is named in the deed as a trustee, and in whom the legal title would have become vested, had said acknowledgment been properly taken, is invalid and of no effect by reason of said notary having such an interest in said deed as grantee, that he was legally incompetent to take such acknowledgment." It is by appellant's counsel insisted, that on the authority of numerous cases a decree cannot be made between co-defendants unless it be based on pleadings and proof between the plaintiff and defendant, and the following authorities are referred to to sustain this position : *Vance* v. *Evans*, 11 W. Va. 342; *Worthington* v. *Staunton*, 16 W. Va. 208 ; *Ruffner & Co.* v. *Hewit & Co.* 14 W. Va. 738–741; *Ould & Carrington* v. *Myers*, 23 Gratt. 383; and that it is a well settled principle, that a decree cannot go outside of pleadings.

See *Burley* v. *Weller*, 14 W. Va. 273; *Hunter* v. *Hunter &c.*, 10 W. Va. 321; *Baugher* v. *Eichelberger*, 11 W. Va. 217, 225, and also *Burlew* v. *Quarrier*, 16 W. Va. 108.

These propositions of law are unquestionably sound, but it does seem to me, that they have no sort of application to the case before us. The bill and amended bill both set out the various liens claimed to be on the land, in the bill and amended bill named, including this deed of trust, and ask, that "a commissioner be directed to ascertain and report any and all liens of any and every kind whatever existing against said property named, and the order of their priority, and that the court will decree a sale of said property or so mnch thereof as may be necessary to pay off and discharge the plaintiff's lien, and other liens existing against the said lands as aforesaid, and that a special commissioner be appointed for that purpose." The amount and priority of the various liens including this deed of trust was directly involved n this cause, as stated in the bill and amended bill, and as a matter of course any one of the defendants and more especially Sarah V. Barrett, had a right in her answer to insist, that any one of these liens was originally invalid or that the debt had been paid off; and surely she could not be deprived of this right by the plaintiff saying, that such lien was valid or such debt had not been paid off.

There is in this case a direct issue made by the bill and the answer of Sarah V. Barrett, as to the validity of this deed of trust. The bill alleges it to be valid, and the answer of Sarah V. Barrett denies that it is valid. The decree therefore as to its validity or invalidity is based directly upon the pleadings and proofs between the plaintiff and the principal defendant, and according to the authorities cited by the appellant's counsel this is the very case, where the court may properly render a decree between co-defendants. This question was thus fairly before the court for decision. Was it properly decided? The authorities all agree, that the privy acknowledgment of a married woman taken by the grantee in a deed, whether he be a trustee or not is a void acknowledgment, and as her deed is inoperative and void without such acknowledgment after privy examination and due recordation it follows, that the deed of a married woman

acknowledged by her before the grantee in the deed, though he be a trustee, is an absolute nullity as to her.    There are decisions, which go much farther than this and hold, that not only a grantee in such a deed cannot take the privy examination of a married woman, but that no party interested in the deed though not a party to it can take such privy examination.    See *Withers* v. *Baird*, 7 Watts 228.    The ground of this decision is, that the taking of an acknowledgment of a married woman is a judicial and not a mere ministerial act.  But an acknowledgment by one, who was not a married woman, before one who was interested in a conveyance, though not a party to it, has been held good.    See *Dussaume* v. *Burnett*, 5 Ia. 95, and Waite, C. J., in the *National Bank of Fredericksburg* v. *Conway*, United States Court Reports, 4th Circuit, vol. 1 (Hughes) p. 45.    This distinction is also recognized in *Stevens* v. *Hampton*, 46 Mo. 404; and in *Lynch* v. *Livingston*, 2 Seld. 434.

It has also been universally held so far as I know, that a grantee in a deed, not a trustee, can not take the acknowledgment of a deed of any sort, though it be the acknowledgment of a man and the act a ministerial and not a judicial act.    See *Beaman* v. *Whitney*, 20 Me. 413 ; *Wilson* v. *Traer*, 20 Iowa 233 ; *Stevens* v. *Hampton*, 46 Mo. 404 ; *Grovesbach* v. *Seely*, 13 Mich. 345.    In this last case the court says : "We should have no hesitation in holding, that a person could not take an acknowledgment of a deed made to himself.    Such a point is too plain for doubt."    This doctrine seems to be recognized in *Dussaume* v. *Burnett*, 5 Ia. 95.    In *Kimball* v. *Johnson*, 14 Wis. 674 an acknowledgment of a deed, which a mortgagee made to a married woman to secure a lien made by her was taken before her husband, and the acknowledgment was held good.    But the husband was no party to the deed and could have no interest in it, as it was to secure money loaned as a part of her separate estate.    In *Brown* v. *Moore*, 38 Tex. where Moore and wife gave a deed of trust to secure a debt on the property of the wife, and the trustee took her acknowledgment, the deed was held void because of this defective acknowledgment.    And in *Stevens* v. *Hampton et al.*, 46 Mo. 407 a deed, which was acknowledged by a grantor, a man, before the grantee, who was a trustee with a power

to sell the property was held to be not properly acknowledged for recordation, and what seems to me to be the correct principle was laid down, that when a recorded instrument shows upon its face, that the acknowledgment was taken by a grantee, though he were but a trustee with power to sell, it is improperly recorded, and is no constructive notice; but when the deed is fair upon its face, it is the duty of the register to receive and record it, and its record operates as notice notwithstanding there may be some hidden defect. Yet a conveyance though improperly acknowledged is good between the parties or those purchasing with actual notice. The court thus reasons:

"The objection to the trustee taking such acknowledgment is analogous to the one forbidding a judge to pass upon his own case. Though this act may not be strictly judicial, it is of a judicial nature and requires disinterested fidelity. We know that in practice such a trustee is always selected by the beneficiary; he is controlled by the beneficiary in fixing the time of sale, and its proceeds come into his hands. There is such an interest, that as to the requisite of the deed itself, he should be placed upon a level with other parties, and be incapacitated from holding any official relation to its execution. The want of a proper acknowledgment does not however invalidate the deed (of one *sui juris*) but only goes to the effect of the record. If not acknowledged or proved, its record is not provided for by law, and the fact that it may be copied upon the book of records will not operate as constructive notice to subsequent purchaser. *Dussaume* v. *Burnett*, 5 Iowa 95; *Lessee of Shults* v. *Moore*, 1 McLean 520; *Barney* v. *Sutton*, 2 Watts 31; *Hastings* v. *Vaughan*, 5 Cal. 315; *Price* v. *McDonald*, 2 Md. 403; *Johns* v. *Scott*, 5 Md. 81. The deed however is good as between the parties, (being *sui juris*) and should prevail against subsequent deeds to those who had actual notice of its existence. *Dussaume* v. *Burnett*, 5 Iowa 95; *Caldwell* v. *Head*, 17 Mo. 561; *Cooley* v. *Rankin*, 11 Mo. 647."

With these views I concur and adopt them as my own; for they accord I think with both reason and authority. Of course the holding of this deed of trust of September 25, 1875, to be null and void, so far as it purported to convey

the undivided moiety of Sarah V. Barrett in the Daniel Stone farm, in no manner affects the validity, as against her or her separate estate, or any note or bond for the debt secured by said deed of trust executed by her; but any liability of her separate estate for said debt can not be enforced in this cause, as it is entirely foreign to the purposes of either of these suits to enforce any claim against her separate estate, which is not a specific lien upon it. See *Hughes* v. *Hamilton*, 19 W. Va. 366. As to what effect the recording of such deed, if seen by a subsequent purchaser with notice it is not proper to decide. See *Friedley* v. *Hamilton et al.*, 17 Serg. & R. 71; *Peebles* v. *Reading*, 8 Serg. & R. 496.

It is claimed however, that there is no proof of the identity of W. W. Van Winkle, the trustee, with W. W. Van Winkle the notary public, who took the acknowledgment of this deed of trust given by C. G. Barrett and his wife S. V. Barrett. It was distinctly asserted in the answer of S. V. Barrett, and it has been in no manner denied by the *cestui que trust*, The Life Insurance Company of Virginia, nor by the trustees Van Winkle or Ambler. I think the identity of the name of the trustee and of the notary public raises a presumption, that they were the same person, which would have in some way to be rebutted or at least denied; but so far from its being rebutted it is strongly fortified. The commissioner in his report says: "Your commissioner further reports, that the plaintiffs by their attorneys claim and ask that the same be reported. First, that the deed of trust given by C. G. Barrett and S. V. Barrett to W. W. Van Winkle and B. M. Ambler, trustees, is invalid for the reason that the acknowledgment thereto was taken by one of the trustees, W. W. Van Winkle, a party to the said deed and a party in interest. The foregoing objection is submitted to your honor's consideration. If well taken the priority of the various liens herein reported will be materially changed, and will be as follows." Then follows a new arrangement of all the liens.

It is insisted, that this is a mere report of what is claimed by the plaintiff's counsel, and that it is not reported as a fact, that the trustee and the notary public were the same person. This it seems to me is not a fair construction of this report. It is true that the statement of the order of the liens, if this

deed of trust is regarded as not properly recorded, is made at the instance of the plaintiff's counsel, and that the commissioner submits the question of law as to whether this deed of trust was or was not properly recorded; but he reports as I understand as a fact, that the notary public who took the acknowledgment, was the trustee in the deed. He certainly intended to make out a statement based on the claim of the plaintiff, that this was an unrecorded deed; a statement on which the court could at once act if it held the law to be as the plaintiff's counsel claimed. And this the court could only do if it regarded as a reported fact, that the trustee and the notary public were the same person. As I construe the report this fact was reported. There can be no doubt, but that the commissioner intended to report this as a fact, and I think his report should be so interpreted. It was not excepted to on this account; but it was treated by the court, as though this fact was reported. I think that it is proper to treat that as a fact established, if not admitted.

My conclusion therefore is, that the decree of October 18, 1879, must for the reasons we have stated be reversed, set aside and annulled, and the appellants must recover of the appellees their costs in this Court expended; and this Court proceeding to render such decree as the circuit court of Wood county should have rendered, the following decree must be entered up:

These causes came on to be heard together, the same having been by consent heretofore considered, the first of the above named causes being heard on the amended bill of Ann R. Tavenner, and the demurrer thereto of C. G. Barrett and Sarah V. Barrett, in which the complainant joined, the joint and separate answer of The Life Insurance Company of Virginia, W. W. Van Winkle and B. M. Ambler trustees, and general replication thereto, the joint and separate answers of C. G. Barrett and Sarah V. Barrett, his wife, to said amended bill, and general replication thereto, the report of Henry Amiss, commissioner, and the exceptions thereto; and the second of said causes being heard on the bill filed at the August rules, 1879, by C. G. Barrett and Sarah V., his wife, against R. C. Tracewell, trustee, and John Buford, and on the injunction awarded said bill, and the answer of

R. C. Tracewell thereto, and general replication thereto, on consideration whereof the said injunction granted in this second of said causes is dissolved; and it is adjudged, that the defendants John Buford and R. C. Tracewell, trustee, recover of the plaintiffs Caleb G. Barrett and Sarah V. Barrett, his wife, their costs about their defense expended. And in the first of said causes the said demurrer to said amended bill is overruled; and the Court being of opinion, that the report of Commissioner Henry Amiss was made, when numerous parties defendant now in said cause were not parties to said cause, and that they had no notice of said report, it would be improper for the Court to act on said report now; the decree should for this reason be set aside, and the cause recommitted to said commissioner or to another commissioner with proper instructions as to the making out of said report.

And it appearing to the court, that the Daniel Stone farm of about seventy acres is now owned jointly by Sarah V. Barrett and John Buford, the said John Buford having purchased the undivided moiety thereof formerly owned by Caleb G. Barrett, when sold by R. C. Tracewell under the deed of trust executed by C. G. Barrett and Sarah V. Barrett on the 10th day of April, 1877, and this Court having heretofore decided, that said deed of trust was null and void, so far as it conveyed the interest of Sarah V. Barrett in said David Stone farm, therefore the Court is of opinion and doth decide, that John Buford now owns the undivided moiety of said Daniel Stone farm, which had belonged to Caleb G. Barrett, subject to all the judgments and other liens by deed of trust on said undivided interest of Caleb G. Barrett, which were valid and binding on it against a purchaser for valuable consideration without notice on the 16th day of April, 1877, when said deed of trust was executed and recorded, under which said Buford purchased; and the Court is also of opinion and doth decide, that the deed of trust executed by Caleb G. Barrett and Sarah V. Barrett, his wife dated September 25, 1875, is invalid, null and void, so far as it purported to convey or to create any lien on the undivided moiety of said Daniel Stone farm, owned by Sarah V. Barrett as her separate estate, and that said deed of trust is also invalid and void

as against all judgments rendered against Caleb G. Barrett, and as to all purchasers from him for valuable consideration without notice; but that the said deed of trust is valid and binding as an unrecorded deed on said Caleb G. Barrett and all purchasers from him with notice of said deed of trust.

The Court is also of opinion, that all judgments rendered by courts of common law or by justices of the peace against Sarah V. Barrett on contracts expressed or implied, made during her coverture, are null and void as against her, and created no liens on her land, the same being rendered against by her courts or justices, who had no jurisdiction to render such judgments against a married woman. And the Court is also of opinion and doth decide, that the plaintiff, Ann R. Tavenner, has a first lien on the parcel of fifteen acres of land sold by her to C. G. Barrett and Sarah V. Barrett, for the purchase-money of said land, six hundred dollars, with interest from August 27, 1877; and that she has also a good and valid lien as of August 27, 1877, for said six hundred dollars and interest on the undivided moiety of Sarah V. Barrett in the Daniel Stone farm, but that she has now no lien on the undivided moiety of said Daniel Stone's farm, now owned by John Buford, by reason of the deed of trust executed by said C. G. Barrett and wife of that date. Inasmuch as the said undivided interest of Caleb G. Barrett has been sold under a previous deed of trust of April 16, 1876, and was purchased by John Buford at the price of eight hundred dollars; but he has a valid lien on any surplus, which may be in the hands of the trustee, R. C. Tracewell, after paying off the expenses of said sale and the debt of John Buford secured by said deed of trust purged of the usury in said debt.

It is therefore adjudged, ordered and decreed, that this cause be refered to one of the commissioners of the circuit court of Wood county, who is hereby directed to ascertain, state and report the number, amount and priorities of all liens by judgments against Caleb G. Barrett, which were re-docketed prior to the 10th day of April, 1877, and which are liens on the undivided moiety of said Daniel Stone farm, now owned by John Buford; and he shall also charge as a lien on the said undivided moiety of said land now owned by John Buford, the debt secured by the deed of trust executed

by C. G Barrett, and wife on the 25th of September, 1875, to Van Winkle and Ambler, trustees, provided on enquiry it be shown, that the trustee, R. C. Tracewell, in the deed of trust of April, 16, 1879, or John Buford, the *cestui que trust* in said deed of trust, had such actual notice of the said deed of trust of September 25, 1875, as made them purchasers of said land with notice.

The said commissioner is also directed to ascertain and report what liens are now existing on the undivided moiety of Sarah V. Barrett in said Daniel Stone farm and their priorities, taking care in ascertaining the same not to treat as liens on the same any debts or judgments, which are hereinbefore decided not to be liens on the same. And the said commissioner is further directed to ascertain and report the amount of the purchase-money due for the purchase of the fifteen acres of land by C. G. Barrett and wife of Ann R. Tavenner, which is a first lien on said fifteen acres, and he shall also ascertain what other debts are liens on the said fifteen acres of land, or on the interest of either C. G. Barrett or Sarah V. Barrett in said fifteen acres of land and their priorities.

The Court doth further adjudge, order and decree, that the defendants C. G. Barrett and Sarah V. Barrett, on the allegations made in their said answer, are not entitled to the affirmative relief asked for in their said answer, they being entitled only to a deed with special warranty of title upon said fifteen acres of land bought of Ann R. Tavenner, when they pay the whole of the purchase-money, and are therefore entitled to no order of reference to ascertain, whether the title to said land is good. And the Court declines to decide, whether partition of said Daniel Stone farm should be made between Sarah V. Barrett and John Buford till said report of said commissioner is returned. And this cause is remanded to the circuit court of Wood county to be further proceeded with according to the written opinion aforesaid, and further according to the principles governing courts of equity.

JUDGES JOHNSON AND SNYDER CONCURRED.

DECREE REVERSED.    CAUSE REMANDED.